THE AMERICAN BUTTON HOLE AND O. S. S. M. Co. v. MOORE ET AL.

1. PLEADING: COMPLAINT: FOREIGN CORPORATION. A foreign corporation plaintiff need not allege in its complaint that such corporation has filed a copy of its articles of incorporation and appointment of an agent upon whom service of process may be had, in the office of the Secretary of the Territory; and upon demurrer, a complaint without such allegation held sufficient.

2. SAME: PRIMA FACIE CAUSE OF ACTION: MATTER OF DEFENSE. There is nothing in the Code which requires the pleader to allege anything more than is necessary to constitute, *prima facie*, a right of action; and such failure of a corporation plaintiff is in its nature matter of defense, and must be shown in pleading by the opposite party.

3. DEMURRER: WANT OF CAPACITY TO SUE. Ground of demurrer for want of capacity to sue. must appear from allegations as made in the complaint, and not from *want* of allegations.

4. WANT OF CAPACITY TO SUE: WHEN BY ANSWER. When a want of capacity to sue does not appear upon the face of the complaint the objection must be taken by answer.

5. CAPACITY TO SUE: NOT AFFECTED BY INHIBITION. Foreign corporations, like other non-residents, are allowed to sue upon furnishing sufficient security for costs: their capacity to sue is not affected by the inhibition contained in sections 567-8-9, Civil Code, which extends only to the ordinary transaction of business.

*Appeal from the District Court of Clay County.*

PLAINTIFF appeals from the order sustaining the demurrer of defendants Snyder and Burdick, and the judgment for costs.

Discarding the printed abstracts as being in some respects, inexact and misleading, a true statement of the case can only be reached by reference to the original transcript.

The complaint alleges that the plaintiff is a corporation chartered by the Legislature of the State of Pennsylvania, and doing business under the name and style of " The American Button Hole, Overseaming and Sewing Machine Company."

2. That on or about the 24th day of November, A. D. 1876, the plaintiff and the defendant, Samuel T. Moore, entered into a written contract, by which the plaintiff agreed to furnish to him such amount of sewing machines, made by plaintiff, as he might require for sale in the village of Vermillion and vicinity; and that said Moore agreed to settle and pay for said sewing machines as in said contract specified—a copy of which contract is given in full, and made a part of the complaint.

Neither the complaint nor the contract itself discloses at *what place* the contract was made; the latter states that the plaintiff was chartered in 1867, and is located in the city and county of Philadelphia. It also shows that at the time, the 24th of November, 1876, the defendant, Moore, was doing business at Vermillion, Clay county, Dakota. Whether the contract was made at Philadelphia, Pa., or within this Territory, there is nothing to show. Moreover by the contract, all sewing machines, etc., manufactured or sold by the company to Moore, were to be supplied and delivered to him at a depot or vessel in the city of Omaha, Nebraska.

3. The complaint further alleges that at the time of execution of said contract, and as security for the full performance of the same on the part of said Moore, that he, and Cyrus Snyder and

F. N. Burdick, did on said 24th day of November, 1876, make, execute and deliver to plaintiff, a bond in the sum of one thousand dollars, conditioned that if the said Moore shall well and truly perform in all respects the contract hereinbefore referred to, and shall well and truly and punctually pay any notes or obligations given under its provisions, then the said bond shall be void, but otherwise to continue in full force and effect—a copy of which bond is given in full and is made part of the complaint.

Again, neither the complaint nor the bond discloses at *what place* the latter was executed, whether within or without the Territory. All that is shown is, that the three obligors then had residence at Vermillion, Dakota.

4. The fourth allegation is, that, in pursuance of the contract, plaintiff did from time to time furnish to said Moore, machines, fixtures, supplies, etc., according to the terms of said contract as the same were ordered and required by him; and in settlement for said machines, etc., the said Moore did thereafter execute and deliver to plaintiff his six certain promissory notes, each of which is set out and all are dated at Vermillion, Dakota. The first three are of December 1st, 1876; and the others bear date January 1st, 1877.

5. It is further alleged that no part of said notes and interest has been paid, except the sum of $93.43; and that there is now due and unpaid on said notes, of principal and interest, the sum of four hundred and eighty-seven dollars and fifty-six cents, up to the first of September, 1879; and that defendants have neglected and refused to pay said notes, though often requested so to do.

6. The sixth averment is, that on the failure of said Moore to pay the notes, the condition of the bond has been broken, and the damage sustained by plaintiff thereby is the amount of the notes and interest aforesaid.

Wherefore the plaintiff prays that the bond be declared forfeited, and that the plaintiff have judgment against the defendants, jointly and severally, for the sum of $487.56, being the amount of said notes up to the first of September, 1879, etc.

To the complaint two of the defendants, to-wit: Snyder and Burdick, demurred, on the grounds that it does not state facts

sufficient to constitute a cause of action; and, secondly, that plaintiff has not legal capacity to sue, as appears upon the face of said complaint.

On the 7th day of February, 1880, the cause coming on to be heard on this demurrer, after argument the court below adjudged that the demurrer be sustained; and the plaintiff "refusing to amend or further to plead, but electing to stand upon or abide by said demurrer," it was further considered and adjudged by the Court, that said defendants have and recover of the plaintiff their costs in this action, taxed at seven dollars and fifty cents. Although not accurately or properly stated, it is to be presumed that the above judgment is equivalent to a dismissal of the complaint as to the two defendants demurring; and the Supreme Court taking such view of it, considered it a sufficiently final judgment. To the decision of the District Court the plaintiff duly excepted, and seasonably appealed to this court.

The foregoing statement of the case is by SHANNON, C. J.

*H. A. Copeland,* for appellant.

This is an action brought by the plaintiff, an incorporation organized under the laws of the State of Pennsylvania, to recover on certain notes executed by Moore for sewing machines had and received by him from plaintiff. Snyder and Burdick are joined, as his sureties on a general bond given at Vermillion at the time of the making of the original contract.

Defendants Snyder and Burdick file a general demurrer.

Defendant Moore raises the same question by answer.

The question raised by the demurrer, and to be passed upon by this court is: Can a corporation organized under the laws of another State maintain an action in this Territory on notes given to said corporation by an individual for goods received, (the goods received and the notes given for the same in the name of the corporation,) when the corporation had not filed a copy of its articles of incorporation with the Secretary of the Territory, and appointed an agent, etc., at the time the notes were given?

The plaintiff's position is, that the defendants having contracted with plaintiff in its corporate name, and received and retains the benefits growing out of the same, cannot question the plaintiff's right to maintain this action in this collateral manner.     In support of this theory the plaintiff refers to the following authorities: *Rice v. Rock Island & A. R. R. Co.,* 21 Ills., 95; *Tarball v. Page et al* 24 Ills., 47; *Goodrich v. Reynolds,* 31 Ills., 497; *Baker et al v. Adm'r of Backus,* 32 Ills., 79; *Stone v. Great Western Oil Co.,* 41 Ills., 94; *Insurance Co. v. Moore,* 55 N. H., 53; *Society v. Perry,* 6 N. H., 164; A. & A. on Corp., 381; *N. W. Union Packet Co. v. Shaw,* 37 Wis., 655; 63 N. Y., 62; *Ramsey v. Peoria Marine Insurance Co.,* 55 Ills., 311; *Palmer v. Lawrence,* 3 Sandf., 161; *Meaker et al v. Chicago Cast Steel Co.,* 64 Ills., 278; *McCarthy v. Lavasche,* 89 Ills., 274; *Baker v. Brannon,* 6 Hill, 47; *Emory v. Connor,* 3 N. Y., 511; *Easton v. Aspinwall,* 19 N. Y., 119; *Meade v. Keller,* 24 Barb., 25; *Furguson v. Sanderson,* 5 Bush, (Ky.) 230; *Franklin v. Twogood,* 18 Iowa, 524; *Newburry Petroleum Co. v. Weir* 57 Ohio St., 353.

This last case covers the whole ground, and from its marked similarity to the case at bar, makes the strongest case which I have found.

The plaintiff also refers to section 376, chapter 3 of the Civil Code of Dakota, page 283, and maintains that the same principle here laid down, applies also to foreign corporations.

*Marcus Robbins,* for respondents.

It appears on the face of the complaint in this action that the plaintiff is a corporation created under the laws of the State of Pennsylvania.

It does not appear that this corporation has complied, or attempted to comply, with the provisions of paragraphs 567, 568 and 569 of the Civil Code of the Territory of Dakota, or that this corporation was created for religious or charitable purposes solely.     It shows that the bond, upon which this action is brought, was executed within the Territory of Dakota.

Respondents claim that this law of the Territory which declares that a foreign corporation shall not transact any business in this

Territory until it has complied with its provisions, is prohibitory, and that all contracts so made are void.

In Re. Comstock 3 Sawyer, 218, the court decides: "That when a State statute provides that a foreign corporation before doing any business in the State must duly execute a power of attorney appointing an agent upon whom all process may be served in suits against the corporation, a contract made by the corporation before complying with the Statute, is illegal and void.

That the doctrine of estoppel *in pais* does not extend so far as to enable a person, or corporation, to do in effect what is forbidden by law, or what they are otherwise incapable of doing, and, therefore, a party to a contract with a foreign corporation, made in violation of such a State statute, is not estopped to show the illegality of the contract for the purpose of preventing a recovery upon it.

The same doctrine is held in *Doyle v. The Continental Ins. Co.*, 94 U. S., (4 Otto) 535; *Washington Co. Mut. Ins. Co. v. Dawes*, 6 Gray, (Mass.) 376.

The effect of such a prohibition unaccompanied by any specific penalty, is to avoid a contract made in disregard of it, for this is the only way by which the prohibition can be enforced. (*Bank of British Columbia v. Page*, 6 Oregon, 431.)

The respondents, Snyder and Burdick, are sureties only. They had no knowledge of the illegal acts of the plaintiff; they violated no provisions of the Statute; they have done nothing to estop their showing the whole character of the consideration on which the bond rests. (*Thorne v. Travelers' Insurance Co.*, 80 Penn. St., 15; Same case, 21 American R., 89.)

Appellant's brief appears to be principally a citation of authorities on the doctrine of estoppel. His strongest case is, " *Newburg Petroleum Co. v. Weir et al*, 27 Ohio St., 343." The following is the first syllabus in that case:

" It is not contrary to the laws of Ohio, nor against public policy, in the present condition of her laws, for a foreign corporation, lawfully organized in a sister State to do business in Ohio."

Paragraph 376 of the Civil Code, plaintiff claims, applies to foreign as well as domestic corporations, but it applies to those only

who claim in good faith to be a corporation under the territorial law, and it is the *due* incorporation that cannot be inquired into collaterally.

A similar section in the California code was interpreted in *Oroville, etc., R. R. Co. v. Plumas County*, 37 Cal., 354, (360 :)

" It does not go to the extent of precluding a private person from denying the existence *de jure*, or *de facto*, of an alleged corporation, and that its *due* incorporation shall not be inquired into."

The same rules in this apply to a territory as to a State.   (Albany Law Journal, Dec. 20, 1879.)

Was this question properly raised by demurrer?   The rule is thus stated in *Williams v. The Insurance Co. of North America*, 9 How. Pr., 365 (373 :)

" The question, which of the parties has the burden of showing (and of course alleging) the facts which make a Statute applicable to the contract in question often arises, and the answer depends upon the frame of the Statute itself.

" When a Statute declares a deed or contract void, if, or provided it is made in a particular manner, or upon a specified consideration, (*e. g.,* upon usury,) it is not necessary for the plaintiff to negative the condition ; he may leave it to the defendant to set up the facts which bring it within the condition upon which, and upon which alone, it is void.

" But where a Statute makes a deed or agreement, or other act void, unless made upon a specified consideration, or under specified circumstances, the rule is reversed ; the plaintiff must show that the circumstances exist under which alone it can have validity ; the defendant, in such case, may rest upon the general prohibition.

" It is decided, in this case, that ' since the passage of the Act relating to Wagers,' etc., (1 R. S., 662, §§ 8, 9, 10,) it is necessary that the plaintiff in declaring upon a policy of insurance which on its face does not import any interest in him in the subject of the insurance should aver that the assured had an interest to be protected thereby, in such a sense that the insurance operated as a security, or indemnity to protect him from loss by the perils insured against."

As the complaint shows that plaintiff is a foreign corporation, respondents insist that it should also, show that plaintiff had complied with the law relating to foreign corporations.

SHANNON, C. J.—It is to be observed that as against the two defendants, Snyder and Burdick, the action is solely upon their bond, and we cannot agree with their counsel that the complaint shows the bond was executed within the Territory. We cannot presume it was executed and delivered at Vermillion, for the instrument does not so state, nor does the complaint. Whether this is material or not, it is best to be accurate. As to these defendants, the notes are referred to in the complaint, as showing a breach of the conditions of the bond, together with the measure of damages, or as admissions of just indebtedness of their principal, under the contract.

By their general demurrer they admit, at least, all such matters of fact as are sufficiently pleaded. Having had their option whether to answer or to demur, they are to be taken, in adopting the latter alternative, as admitting that they had no ground for denying or traversing the facts as alleged. They consequently confess that the facts alleged are true, and, therefore, the only question for the Court is, whether, assuming such facts to be true, they sustain the case of the party by whom they are alleged.

Thus, among other things, these defendants have admitted that the plaintiff is a company duly incorporated by the Legislature of Pennsylvania, and that it was doing business under its corporate name; that as such corporation, they voluntarily entered into the contract, or obligation, with it, upon the strength of which the plaintiff parted with its property; that it furnished the sewing machines to Moore under the contract and at the place designated; that his notes were not paid at maturity, and that he is justly indebted in the sum named. In fine, they admit their liability under the bond, *provided* the plaintiff can show a compliance with a certain Statute referred to in the argument. In other words, the whole pith and moment of the contention, are concentrated in the objection made by respondents' counsel, in his brief, to-wit: "It

does not appear that this corporation has complied, or attempted to comply, with the provisions of paragraphs 567, 568 and 569 of the Civil Code of the Territory of Dakota, or that this corporation was created for religious or charitable purposes solely."

Before the Code of Procedure, it was a principle that a demurrer is never founded on matter collateral to the pleading which it opposes, but arises on the face of the statement itself. Again it was a rule that it is not necessary to state matter which would come more properly from the other side, that it is not necessary to anticipate the answer of the adversary. It was sufficient that each pleading should, in itself, contain a good *prima facie* case, without reference to possible objections not yet urged. Thus in declaring upon a devise of land by force of an English Statute of wills, it was sufficient to allege that such a person was seized of the land in fee, and devised it by his last will, in writing, without alleging that such devisor was of full age. For though the Statute provided that wills made by *femes covert*, or persons within age, shall not be taken to be effectual, yet if the devisor were within age, it was for the other party to show this in his answer, and it needed not to be denied by anticipation. This was on the principle that if the law raises an exception to the general right, the exception need not be stated in the pleading; and that illegality in a transaction is never presumed, but, on the contrary, everything is presumed to have been legally done till the contrary is asserted and proved. And it was clearly determined that in *declaring* upon a contract within the Statute against frauds, it need not be alleged that the contract was in writing. Generally, the old rule was stated to be, that wherever there is a circumstance, the omission of which is to defeat the plaintiff's right of action, *prima facie* well founded, whether called by the name of a proviso or a condition subsequent, it must in its nature be a matter of defense, and ought to be shown, in pleading, by the opposite party. So, in pleading upon Statutes, if there be an exception in a subsequent clause or section, *that* is matter of defense, and the other party must show it to exempt himself from the penalty. (See the case of *the Territory v. John Scott*, decided at the May term, 1880, of this court.)

The Code of Civil Procedure abolished all the old forms of

pleading, and established new and simple ones, with general rules by which the efficiency of pleadings is to be determined. However, as the general plan is the same, we must still necessarily revert to the former sostem for our guidance in filling up the outlines. The complaint must contain a plain and concise statement of the facts constituting a cause of action. By it the plaintiff states his claim, or what he regards as his right to recover; and as formerly so now, the statement is sufficient if it contain a *prima facie* case.

The only pleading allowed on the part of a defendant, is either a demurrer or an answer. Generally, the latter must contain denial, or a statement of any new matter constituting a defense or counter-claim. Thus, he may still confess all the allegations of the complaint, but, by setting out the new matter, he may, if it is sufficient, avoid the right to recover; for, in such way, the *prima facie* case of the plaintiff may be rebutted and destroyed. For example, although civil actions can only be commenced within the periods prescribed in the Code, after the cause of action shall have accrued, yet the objection that the action was not commenced within the time limited, can only be taken by answer.

As to demurrer, section 113 of the Code provides that the defendant may demur to the complaint when it shall appear *upon the face thereof* that there is one or more of six specified defects therein. The second is that the plaintiff has not legal capacity to sue; and the sixth is, that the complaint does not state facts sufficient to constitute a cause of action. And these are the two grounds upon which, in the present case, the defendants have chosen to place their demurrer. It is not sustainable, as we have seen, upon the latter ground, for that relates only to the statement of facts constituting the cause of action. The complaint does not fail to show a right of action, unless, indeed we are to presume some illegality in the transaction. As this is not apparent, the presumption is the other way, that everything has been legally done. There is nothing in the Code which requires the pleader to allege anything more than is necessary to constitute *prima facie*, a right of action, or a legal defense. Of the very essence of defense, is any *new matter*, by which is still meant

*facts* which go in avoidance of what has been before pleaded on the opposite side.

We next come to consider the other alleged ground of demurrer, to-wit: "That plaintiff has not legal capacity to sue, as appears upon the face of said complaint." The corporation plaintiff, although foreign to us, is yet, in a certain sense, a citizen of the State of Pennsylvania; and by the general comity which obtains through the States and Territories of the United States, corporations created in one State or Territory are permitted to sue in another State and Territory. But apart from any doctrine of mere comity, we have express legislation on the subject, by which foreign corporations, like all non-residents, are allowed to sue upon furnishing sufficient surety for costs. A general right to sue is thus clearly given to such a corporation; and in any case unless the complaint itself discloses facts to the contrary, the right, on demurrer, is presumed to exist, until the contrary is shown.

Ground of demurrer for want of capacity to sue, must appear from the allegations as made in the complaint, and not *from want* of allegations. The respondents rely on the latter ground. They insist that the complaint is defective for want of an allegation showing a compliance with the provisions of the sections named; and that unless the corporation has so complied, it has no capacity to sue. If this proposition were to be granted, what then? To sustain the demurrer, the Code requires that it should appear upon the face of the complaint, that there is no such capacity, a thing which in no respect appears. For aught appearing upon the face of the complaint, the plaintiff may, in point of fact, have complied with the alleged conditions. Section 116 provides that when any of the matters enumerated in section 113 *do not* appear upon the face of the complaint, the objection may be, taken by *answer*, thereby pointing out the correct practice, with sufficient clearness.

There is not in this case any defect appearing on the face of the complaint, even by assuming the position taken to be true. For aught that appears, the plaintiff is not only qualified to sue, but also to transact any business and to enforce its contracts.

But it must be admitted that the plaintiff has the legal capacity

to sue, if that right is not taken away by section 567. Is it thereby taken away? It is not so expressed in the section, nor is it necessarily implied. When it is declared by section 567 of the Civil Code, substantially, that no foreign corporation shall "*transact any business*" within this territory, until it shall have filed a copy of its charter, and appointed a resident agent, is a foreign corporation thereby deprived of its right to have the validity of its contracts inquired into and determined by our courts? The right to sue and to be heard is one thing; but the right to have contracts enforced upon trial, is another and a quite distinct matter.

. In this further view, we are, consequently, confronted with the direct query, to-wit: By inhibiting the transaction of business, did the Legislature mean to deprive these corporations of the capacity to sue? By the exercise of this power, the plaintiff does not seek to *transact business,* as these words are generally understood, but to enforce alleged rights springing from past business transactions. Therefore, by no fair or proper implication is such corporation thereby deprived of its right to sue. The inhibition, at most, extends only to the ordinary transaction of business; and it cannot be construed, by any enlarging process, to embrace and prohibit the exercise of another independent power existing by general comity, as well as by express legislation.

The conclusion is, that the legal capacity of the plaintiff to sue is not at all affected by section 567, no matter how non-compliance therewith, (if hereafter shown,) may affect its contracts, a point which we are not now called on to decide.

This branch of the demurrer, like the other, avails nothing; and to bring up the question attempted to be raised by the defendants, an answer is required.

Before determining so grave a question, we must not only have a proper case, but great care must be taken to examine that class of authorities which assert the doctrine, that when a Statute prohibits an act, or annexes a penalty for its commission, it does not always follow that the unlawfulness of the act was meant by the law makers to avoid a contract made in contravention of it. (*Harris v. Runnels,* 12 How., 79; *Gold Mining Co. v. National Bank,* 6

Otto, 640; *National Bank v. Mathews*, 8 Otto, 624; *Commissioners, etc., v. Bolles*, 4 Otto, 104; *Whitney v. Wyman*, a very recent case in S. C. of U. S., not yet regularly reported; *Pangborn v. Westlake*, 36 Iowa, 546; *Mutual Life Ins. Co. Wilcox*, in Albany Law Journal, Vol. 17, p. 426; *Smith v. Sheeley*, 12 Wall., 361; *Newburgh Petroleum Co. v. Weare*, 27 Ohio St., 343.)

The judgment is reversed and the cause remanded to the court below, with directions to overrule the demurrer and to give the defendants thirty days within which to serve an answer, and to proceed thereon according to law.