GOODWIN *et al.*, v. KERR; SCARRITT, *Interpleader, Appellant.*

1.  **Assignment:** POSSESSION : FRAUD. Retention of possession of personal property by the assignor after assignment for benefit of creditors, is not *per se* fraudulent, and does not render the assignment void.

2.  **Assignor and Assignee:** SUBSEQUENT AGREEMENT. An assignment for benefit of creditors, free from fraud in its inception, duly executed, acknowledged and recorded, is not invalidated by a subsequent agreement between the assignor and assignee to disregard it, or by subsequent fraudulent acts on their part with respect to the assigned property.

3.  **Evidence.** The conduct of the assignor and assignee subsequent to the assignment, is a matter for the consideration of the jury in determining whether the assignment was fraudulent in its inception.

*Appeal from Jackson Circuit Court.*—HON. F. M. BLACK
Judge.

REVERSED.

*Botsford & Williams* and *Scarritt & Scarritt* for appellant.

Fraud, to have the effect to vitiate the assignment must exist at the time the assignment is made. Shep. Touch., 67 ; Bump Fraud. Conveyances, (3 Ed.) p. 359, and cases cited. The acts of the assignor and assignee, after the assignment had been executed, acknowledged and recorded, either in refusing to carry it into further effect or attempting to rescind and abandon it, did not destroy the trust in favor of the creditors, or operate to divest the title out of the assignee and re-vest it in the assignor. *Gates v.*

*Lebeaume,* 19 Mo. 17; *Hardcastle v. Fisher,* 24 Mo. 70; *Pinneo v. Hart,* 30 Mo. 561; *Crow v. Beardsley,* 68 Mo. 438; *Hatcher v. Winters,* 71 Mo. 30; *Read v. Robinson,* 6 Watts & Serg. 329; *Seal v. Duffy,* 4 Barr (Pa.) 274; *Mark's Appeal,* 35 Pa. St. 231; *Alpaugh v. Robinson,* 27 N. J. Eq. 96; Burrill on Assign., (3 Ed.) §§ 266, 267, 268, 269, 296, 297, 298. Retention of the assigned property by the assignor did not render the assignment void, an assignment for benefit of creditors not being within the 10th section of our statutes concerning fraudulent conveyances. *Keeler v. Tutt,* 31 Mo. 307; Benjamin on Sales, p. 1; Chitty on Contracts, (11 Ed.) p. —; Burrill on Assign., § 4; *State v.' Benoist,* 37 Mo. 500; *Crow v. Beardsley,* 68 Mo. 438; N. Y. Rev. St. 1845, chap. 10, p. 127.

*Lathrop & Smith* with *James Gibson* for respondent.

Transfer of the possession of the property to the assignee is essential to the validity of an assignment for the benefit of creditors. *Edwards v. Harben,* 2 Term. Rep. 587; Burrill on Assign., (3 Ed.) chap. 29, p. 360; *Ib.,* p. 517; *Wordall v. Smith,* 1 Camp. 332; *Rogers v. Vail,* 16 Vt. 327; *Cunningham v. Neville,* 10 S. & R. (Pa.) 251; *Beers v. Lyon,* 21 Conn. 604, 615; *Ramsey v. Stevenson,* 5 Martin (La.) O. S. 23; *Hughes v. Ellison,* 5 Mo. 463; *Hatcher v. Winters,* 71 Mo. 30, 35. "Every sale" mentioned in section 2505 of Revised Statutes, covers "every assignment," and if it does not, the common law requires possession to accompany every transfer of personal property, and assignments are but conveyances for special purposes. *Hamilton v. Russell,* 1 Cranch 309; *Lowenstein v. Flamand,* 82 N. Y. 494, 497. The third, fourth, fifth and sixth instructions for plaintiff are proper. Burrill on Assign., (3 Ed.) §§ 344, 346; *Reed v. Pelletier,* 28 Mo. 173; *State v. Benoist,* 37 Mo. 500; *Burgert v. Borchert,* 59 Mo. 80; *Caldwell v. Williams,* 1 Ind. 405; *Flanigan v. Lampman,* 12 Mich. 58.

HENRY, J.—Plaintiffs sued Kerr by attachment in the

special law and equity court of Jackson county, and the attachment was levied upon a stock of goods, (queensware, etc.,) in a storeroom in Kansas City occupied by Kerr as a retail dealer in such goods. Scarritt interpleaded, claiming the goods under an assignment made to one Wm. H. Watts, by Kerr, for the benefit of his creditors, Scarritt having been appointed assignee by the circuit court of Jackson county, to which, by agreement, the cause was transferred.

At the trial it appeared that after the assignment was executed and recorded, Watts proceeded to take an inventory of the goods, but before concluding it Kerr told Watts to discontinue it, as he, Kerr, had been badly advised to make the assignment, and thereupon Watts, an attorney, having advised the assignment, refused to act as assignee, and restored, if he in fact ever had, the possession of the goods to Kerr, who afterward, as before the assignment, sold them at retail and appropriated the proceeds of sales as he thought proper. This continued from about the 5th or 6th of August until the first attachment in this cause was issued. When that attachment was levied, Watts had refused to act and Scarritt had not been appointed in his stead, and Kerr was in possession.

It is unnecessary to make a detailed statement of the evidence, or to embody in this opinion all the instructions given and refused. For plaintiffs seven were given; fourteen asked by interpleader were refused, and four were given by the court of its own motion.

In the first and seventh given at the plaintiffs' instance, the jury were told in substance that if Watts, the assignee, did not take actual possession of the goods, or if his possession was not visible, continued and exclusive against Kerr, the assignment was void, or if after the assignment and prior to the date of the attachment and before Watts had taken full control and management of said goods, or before Watts had filed his bond and completed an inventory of the goods it was agreed by Kerr and Watts that the assignment should be disregarded, and the possession and

control and disposal of the goods should be with Kerr, who. was so in possession of the goods at the date of the attach- ment, then the interpleader could not recover. Two im- portant propositions of law are contained in these instruc- tions, either of which, if correct, is decisive of this case against the interpleader.

It is first asserted that the retention of the goods as- signed by the assignor after the assignment, is *per se* fraud- ulent and renders the assignment void. Second, that after an assignment is made with however honest an intent, the assignor and assignee may, by their fraudulent conduct with regard to the property, or by an agreement between them that the assignment should be disregarded and held for naught, followed by a surrender of the possession of the assigned goods by the assignee to the assignor, invalidate the assignment.

As to the first proposition Mr. Burrill, in his work on Assignments, says : " The predominant rule in the United States appears to be that possession must accompany and follow a deed of assignment by a debtor and the possession of the assignor after the transfer, unless explained, will render the assignment void as *against* creditors." 402, § 277. That " possession is only *prima facie* and not conclu- sive evidence of fraud ; and that it may always be explained so as to show the transfer to have been *bona fide* and upon sufficient consideration." *Ib.*, 393, § 273. It must be con- ceded that this is the law in this State, unless our statute, (§ 10, Wag. Stat., 281,) is applicable to assignments. It provides that : " Every sale made by a vendor of goods and chattels in his possession or under his control, unless the same be accompanied by delivery in a reasonable time, (regard being had to the situation of the property,) and be followed by an actual and continued change of the posses- sion of the things sold, shall be held to be fraudulent and void as against the creditors of the vendor and subsequent purchasers in good faith." If an assignment is included in the term " sale," the instructions of the court on. this

subject were correct declarations of law.   Is an assignment
a sale within the sense of section 10, *supra?*   In *Kuykendall
v. McDonald*, 15 Mo. 418, Judge Scott delivering the opin-
ion of the court, observes :   " This revives the old question,
whether the continuing in possession of personal property
after a sale is a fraud in law, and so to be declared by the
court.      *      *      The contrariety of opinion entertained
by different courts and the conflicting views in the same
courts, in relation to this question, induced the legislature
at the late session to interfere and settle it definitely.   It
was hoped this had been done       *      *   .   The 4th sec-
tion of the act referred to prescribes how gifts of goods
may escape the imputation of fraud resulting from a want
of possession in the donee.   The 8th section shows how
deeds of trust and mortgages affected with a charge of
fraud growing out of the want of possession in the mort-
gagee and trustee may avoid a like imputation.   But the
case of an absolute sale with possession continuing in the
vendor, stood on different considerations, and no provision
was made for its protection.   It was made a presumption
of fraud and a conclusive one, unless the jury was satisfied
that it was made in good faith without any intent to de-
fraud creditors.   The 10th section of the act was borrowed
from the code of New York."   The statute of New York
declared not only that every sale but that every assignment
of goods and chattels by way of mortgage, or upon any
condition whatever, unless the sale or assignment be accom-
panied, etc.; and why, when our legislature enacted section
10 it confined its operation to sales, omitting that portion
of the section of the New York statute including in express
terms assignments, we cannot explain ; but evidently there
was a reason for it, and the omission furnishes a convinc-
ing argument that it was not intended to apply to that class
of transfers of property, the same stringent rule that was
made applicable to sales of goods and chattels.

Mr. Burrill in his work, states the distinction between
a sale and an assignment.   One important distinction "arises

out of the character of a trust which belongs to an assignment. A sale in cases free from fraud is on delivery of the things sold and receipt of the consideration a complete transaction, passing absolutely and irrevocably all the seller's interest in the subject of it, without reversion or return under any circumstances." Burrill on Assign., p. 8, § 4; *State ex rel. Phillips v. Rowse*, 49 Mo. 586. "A sale is a transferring of property from one person to another, in consideration of a sum of money to be paid by the vendee to the vendor." Long on Sales, 1. It is a " transfer of the absolute or general property in a thing for a price in money." Benjamin on Sales, 1. An assignment is no more a sale than is a mortgage, both of which are transfers of the present dominion over the property by the owner to another, and in each of which, if there be a surplus, after the purposes of the conveyance are satisfied, it belongs to the assignor or mortgageor. An assignment bears a stronger resemblance to a mortgage than to a sale, and in view of the palpable distinctions between a sale and an assignment, and of the omission by the legislature from the 10th section of the words in the statute from which it was borrowed, by which assignments were expressly excluded, we are forced to the conclusion that section 10 has no application to assignments. This view is strengthened by the fact that the legislature has, in a chapter devoted to voluntary assignments, required them to be proved or acknowledged and certified and recorded in the same manner as is prescribed by law in cases wherein real estate is conveyed, and also required the assignee to give bond with securities to be approved by the circuit court, or judge or clerk thereof in vacation, to inventory the property and have it appraised, and to file his inventory in the office of the clerk of the circuit court, and prescribing his duties in relation to allowing demands of creditors against the property assigned, and to making settlements with the circuit court. A chapter regulating voluntary assignments, substantially the same as in the revision of 1879, will be found in the Revised

Statutes of 1845, and in every subsequent revision, and assignments may have been omitted from section 10 under the impression that the chapter on assignments was all the legislation needed on that subject.

The next question is, can an assignment free from fraud in its inception duly executed, acknowledged and recorded be invalidated by a subsequent agreement between the assignor and assignee to disregard it and hold it for naught, or by any fraudulent acts on their part with respect to the property assigned? "Another rule (says Mr. Burrill) is, that the character of the assignment will not be affected by subsequent events, and if valid in its creation, no subsequent fraudulent or illegal acts of the parties can invalidate it." In *Gates v. Lebeaume*, 19 Mo. 17, it was declared that the character of the assignment will not be affected by subsequent events, and, if valid in its creation, no subsequent fraudulent or illegal acts of the parties can invalidate it. The instructions presenting that view should have been given.

The court properly held that the conduct of the assignee and assignor, subsequent to the assignment, was a matter for the consideration of the jury, in determining whether the assignment was fraudulent in its inception, and the evidence to prove it was admissible. We cannot refrain, however, from expressing the regret that the law is as we are constrained by authority to declare it. The case at bar shows how the rights of creditors may be utterly destroyed, by a fraudulent debtor and an assignee who is willing to aid him in his scheme to delay, hinder and defraud them. We would not be understood as intimating that Mr. Watts, the original assignee, had in view the hindering, delaying or defrauding of Kerr's creditors, but indignant at the conduct of Kerr after the deed of assignment was executed and recorded, but before he had given bond, he refused to act longer as assignee, and the property of course again came into the possession of the assignor, who used and controlled it as if no assignment had ever been

made. We see no good reason why the same rule on the subject of the possession of the goods sold prescribed by the statute, should not be applied to the case of an assignment of goods and chattels for the benefit of creditors, but that is a matter for the consideration of the legislature.

The judgment is reversed and the cause remanded. All concur.