JOHN SULLIVAN, PLAINTIFF IN ERROR, V. GEORGE L. SMITH, ASSIGNEE OF HENNIGEN AND ASHTON, DE-FENDANT IN ERROR.

1. **Assignment:** SUBSEQUENT FRAUD. Where a valid assignment is made for the benefit of creditors, no fraudulent act of the, assignor after the taking effect of such assignment will vitiate it. Nor will a failure on the part of the assignee to account for money or property of the assigned estate have that effect.

2. ———: POSSESSION OF ASSIGNED ESTATE. It is necessary for the assignee to take possession of the assigned estate, but so far as the formal act of taking possession is concerned, no stricter rule applies than in case of ordinary purchase. A formal delivery of the keys to storehouses, safe, and shops, accompanied by a pointing out and surrender of possession of stock in pens, horses, harness, wagon, etc., in barns, is sufficient.

3. ———: PARTNER MAY EXECUTE. One of two partners, with the consent of the other, may, convey real estate of the firm by an assignment in the name of the firm.

4. ———: CONSENT, WHAT IS. Where one of two partners absconds, taking with him the available funds of the firm, leaving it insolvent and in the exclusive control of the other partner, this will imply consent on the part of the absconding partner to any sale, conveyance, or assignment of the partnership property by the remaining partner, which may be necessary for the payment of partnership debts.

ERROR to the district court for Seward county. Tried below before GEORGE W. POST, J.

*Hastings & McGintie,* for plaintiff in error, cited: Burrill on Assignments, 113. Collyer on Partnership, § 394. Story, § 101. *Hughes v. Ellison,* 5 Mo., 463. *Holland v. Drake,* 29 Ohio State, 441. *Heelan v. Hoagland,* 10 Neb., 511.

*D. C. McKillip* and *John H. Ames,* for defendant in error, cited: *Deckard v. Case,* 5 Watts, 24. *Kelly v. Baker,* 2 Hilton, 531. *Palmer v. Myers,* 43 Barb., 509. *Rumery v. McCulloch,* 54 Wis., 565. *National Bank v. Sackett,* 2 Daly, 395.

REESE, J.

This is an action of replevin instituted by the defendant in error, the assignee of Hennigen and Ashton, against the plaintiff in error, in the district court of Seward county. No replevin bond having been given, the property was returned to the defendant below, and the action was prosecuted as one for damages, under the provisions of section 193 of the civil code. The plaintiff in error, being the sheriff of Seward county, and having the property in his possession under an order of attachment, released it to the attachment defendant, but a judgment having been afterwards rendered in favor of the plaintiff in the action in which the attachment had issued, and an execution having been issued, the property was retaken by him, levied upon, and sold. The defendant in error claimed said property by virtue of an assignment made to him before the levy by the firm of Hennigen and Ashton, who were the owners of the property and were insolvent. By agreement of the parties, the cause was referred to E. J. Hainer, Esq., to take the testimony and report the facts. A trial was had

before the referee. The facts found by him and reported
to the district court were, substantially, that on the four-
teenth day of October, 1880, Peter Hennigen and W. H.
Ashton were, and had been since January 1st, 1879, en-
gaged in business as partners, in Seward, in the business of
pork packing, shipping live stock, and dealing in meats;
and that on the seventh day of October, 1880, Hennigen,
without the knowledge or consent of Ashton, absconded, tak-
ing with him the proceeds of a shipment of hogs, amounting
to the sum of $4,000, the property of the firm, and leaving
the firm insolvent, and that he thereafter ceased to act as a
member of said firm; that on the fourteenth day of Octo-
ber, 1880, said firm were possessed of both personal and
real property, the title to a part of the real estate appear-
ing of record in the name of Hennigen and a part in the
name of Ashton, and none of it was in the name of the
firm. On the last named date, Ashton, after making dili-
gent inquiry for Hennigen but failing to ascertain anything
of his whereabouts, in the name of and as sole surviving
member of said firm, executed and delivered to the defend-
ant in error a deed of general assignment of all the prop-
erty of said firm for the benefit of its creditors. At this
time the attachment by which the property in dispute was
levied upon had been issued, and it was apparent that more
would follow, and that unless the property was secured to
the creditors much of it would be consumed in litigation
between rival creditors, but that a majority of the credit-
ors had knowledge that an assignment was about to be
made and none objected thereto;- that the assignment was
made in good faith for the purpose of avoiding attachments
and to secure a fair distribution of the firm property among
the creditors; that the assignee duly qualified and took
possession of all the property, including the property in
dispute, and caused it to be inventoried and appraised; but
that a portion of the property, amounting in value to the
sum of $140, was inadvertently omitted from the appraise-

ment and inventory, and was afterwards, without the knowledge of the assignee, fraudulently appropriated by the assignor to his own use; and that twenty-three head of cattle which were turned over to the assignee were not inventoried or appraised, and on the third day of May, 1881, the defendant in error fraudulently turned them out to be levied upon by an individual creditor of Hennigen, and no account of them had been rendered by the assignee; that in accepting and entering upon the trust created by the assignment, the assignee acted in good faith and with the *bona fide* intention of carrying out the terms of the assignment, without fraud or collusion and for the best interests of all concerned; and that the value of the property in dispute in this action was five hundred dollars.

Upon these findings of fact the court found, as conclusions of law, that at the time of the commencement of the action the right of property and the right of possession of the property in dispute were in the plaintiff (defendant in error), and that said property was unlawfully detained by the defendant (plaintiff in error), and that the plaintiff (defendant in error) was entitled to judgment for the value thereof. Whereupon judgment was rendered in favor of the defendant in error for the sum of $500.

The plaintiff in error assigns a number of alleged errors, which we will notice briefly in their order as presented in his brief.

It is insisted that the report of the referee is inconsistent and shows that the assignment was fraudulent, and that the report is not sustained by the evidence. In support of this, we are cited to the findings of the referee, that the assignment was made and accepted in good faith, but that afterwards the assignor fraudulently converted the property which had been overlooked, and that the assignee fraudulently relinquished his title to the twenty-three head of cattle some six months or more after accepting the assignment. It seems to us that it needs no argument or

citation of authorities to convince any person that the plaintiff's position cannot be sustained. No act of the assignor, however fraudulent, after the assignment, could affect it or the rights of others thereunder, and if the assignee has failed to properly discharge his duty he is liable on his bond to the extent of his failure, and the assignment itself cannot be impaired by his subsequent misconduct. Whether or not there was such misconduct cannot be decided in this action, as it is claimed by the assignee that the cattle did not belong to the firm of Hennigen and Ashton.

It is next claimed that the finding of the referee, that the defendant in error took possession of the property and caused it to be inventoried, appraised, etc., is contrary to the evidence. We do not so regard it. The evidence shows that a part of the assigned property was real estate and part personal property, consisting of hogs, corn in the field, a team of ponies, wagon, and harness, and other personal property usually kept about the slaughter house and necessary to carry on the business; that the keys to the storehouse, shop, and safe were delivered to the assignee, and the stock and other personal property were identified and set off to him; that it was necessary to gather the corn with which to feed the hogs and other stock until they could be disposed of. Immediately after the assignment the sheriff levied his writ of attachment upon the property and claimed the possession. By an agreement between the assignee and one Frank Ashton and the sheriff, Frank Ashton and his brother, the assignor, were hired to take care of the stock and other property, where they were, until such time as the property might be sold. The assignment being made by the firm of Hennigen and Ashton, we can see no impropriety in the assignee employing W. H. Ashton and his brother thus to care for the property. The delivery to the assignee was sufficient.

On the cross-examination of W. H. Ashton by the plaintiff in error, it was sought to be shown by him that the

assigned property was not all delivered to the assignee. Upon objection this was excluded by the referee, and the plaintiff insists that this ruling was erroneous. It is not necessary here to examine this question, as, if it was error, it was without prejudice, as the matter was afterwards fully testified to by the witness.

The record discloses that the assignment was made by Ashton alone, acting for the firm of Hennigen and Ashton, and the plaintiff in error insists that such an assignment could not be thus made, or rather that one partner cannot without the consent of his copartners make a valid assignment of the partnership property, especially when the property so assigned consists in whole or in part of real estate, the legal title to which is held by the partner who does not join in or assent to the assignment, and that under the rule declared in *Heelan v. Hoagland*, 10 Neb., 511, there being no power to convey real estate, the whole assignment must fall.

On these questions there is a conflict of opinion among text writers and courts of last resort. But we think, from a careful examination of the authorities at our command, it is pretty generally conceded that whether the partnership assets consist of personal or real property, one partner may assign the property of the firm for the payment of firm debts when the other partner has relinquished all control of the partnership affairs and consents to such assignment; and if he absconds, leaving the business in the hands of the remaining partner, this will be regarded as evidence of consent and of authority to the remaining partner to make such assignment, and where the absence of the partner is coupled with circumstances tending to show such authority, especially where the assignment is made without preferences, or in an extraordinary emergency, the assignment will be sustained. Burrill on Assignments, § 86. Parsons on Partnership, 166. *Rumery v. McCulloch*, 54 Wis., 565.

31

The evidence and finding of the referee show clearly that Hennigen absconded, taking with him from four to five thousand dollars, being all the available funds of the firm, and leaving Ashton to make such arrangements with the firm creditors as he could, or in case of his failing to do so the firm property might be squandered in litigation, and but few of the firm debts be paid. Ashton, by the employment of the telegraph and detectives, sought to ascertain his whereabouts, but failed. Creditors, as Hennigen must have expected, were clamoring for their money. Attachments were being issued, and it was very apparent that the resources of the firm would be exhausted in the payment of costs unless some transfer could be made to avoid it. It cannot be doubted that Ashton, being thus left by Hennigen to manage the affairs of the firm, might have sold any of the property, real or personal, in payment of the firm debts. Then why can he not sell or assign it, to be applied *pro rata* upon those debts? It was evident from the start that the personal property would be inadequate to pay them. The real estate must go sooner or later.

In *Dupuy v. Leavenworth*, 17 Cal., 263, Shelley, one of the firm of Norris & Shelley, had absconded, leaving both real and personal property in the possession of Norris, his partner. Norris sold the personal property and transferred the real estate to Davis by the firm name of Morris and Shelley, who conveyed to the plaintiff. Afterward Shelley returned, and conveyed his interest in the real estate to Baker, one of the defendants. Field, Ch. J., in writing the opinion of the court, says: "The real and beneficial interest which each partner possesses in the partnership property is the balance coming to him after the payment of the partnership debts and the settlement of accounts with his copartners. And in view of equity it is immaterial in whose name the legal title of the property stands, whether in the individual name of one copartner or in the joint names of all. * * * * The possessor of the

legal title in such case holds the estate in trust for the pur-
poses of the copartnership.   Each partner has the equitable
interest in the property until such purposes are accom-
plished.   Upon the dissolution of the copartnership by the
death of one of its members, the surviving partner, who is
charged with the duty of paying the debts, can dispose of
the equitable interest, and the purchaser can compel the
heirs at law of the deceased partner to perfect the purchase
by the conveyance of the legal title.   *Andrew's Heirs v.
Brown's Adm'r.*, 21 Ala., 443.   *Delmonico v. Guillaume*, 2
Sand. Ch., 367.   Under the special circumstances of this
case—Shelley having absconded with all the available
funds of the firm, leaving Norris without sufficient means
to pay the debts of the copartnership, and the personal
property having been in good faith first exhausted and
found to be insufficient—it is not perceived why the same
rule which governs as to the authority of the surviving
partner should not apply.   We think it does apply; and
that, under the circumstances stated, the equitable right
and interest to the one undivided half the legal title to
which stood in Shelley's name, passed by the conveyance to
Davis."

In *Rumery v. McCulloch*, 54 Wis., 565, the supreme
court of Wisconsin held, citing authorities, that an assign-
ment by one member of a firm, made after a former inef-
fectual assignment by both partners, was sufficient to con-
vey the real estate of the firm, the former assignment being
held to imply authority and consent that the assignment in
question should be made.

In Parsons on Partnership, page 166, it is stated that
the weight of authority sanctions the right of one partner
to assign the whole property in trust for all the creditors,
especially if done without any preferences of any kind.
And in a note to this text he says: "As to what is actually
established by the cases, it seems to be pretty generally ad-
mitted and laid down that one partner may make a valid

general assignment of all the partnership property to trustees for creditors, if such act is justified by the situation of the firm at the time, and if the other partners are absent from the country or have made the assignor sole managing partner, or if in any way expressly or by implication they may be supposed to have conferred upon the assigning partner sufficiently extensive authority." In support of this, many authorities are cited by the author.

We therefore conclude that, under the circumstances of the case, Ashton had the right and implied authority to make the assignment in question, conveying both real and personal property, and that said assignment conveyed to the assignee the property in dispute, and that the finding of the referee and the decision of the district court should be sustained. The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.