## WRIGHT v. LEE *et al.*

1. A decision of the supreme court on appeal is the law of the case on a subsequent appeal.

2. The supreme court will not amend a bill of exceptions to conform to an affidavit, as it is without jurisdiction to change the record certified on appeal.

3. After defendants had seized and sold under execution all the assets of a corporation that were in the hands of the assignee for the benefit of creditors, except two tracts of land, the fact that the assignee's relative bought one of said tracts at a sum less than its estimated value, under a foreclosure of a mortgage executed by said corporation, and bought the other tract at a tax foreclosure sale, is not proof that the assignment was void in its inception, as being fraudulently executed for the benefit of the assignee.

4. An assignment free from fraud in its inception is not invalidated by subsequent fraudulent acts.

5. Horses, cattle and machinery were assigned for the benefit of creditors; and immediately thereafter the assignee moved into the ranch house, and placed a foreman in charge, and told the furnisher of food to continue the account, and he would pay the same. The property was all placed in barns, and he nailed up some doors, and put locks on all the others. *Held,* that the assignment was "accompanied by an immediate delivery and followed by an actual and continued change of possession," as required by Comp. Laws, § 4657.

6. The court should charge that an assignment for the benefit of creditors was "accompanied by an immediate delivery and followed by an actual and continued change of possession," as required by Comp. Laws, § 4657, where there is undisputed evidence sufficient in law to justify such a conclusion, in view of Comp. Laws, § 4659, excepting cases with-

in Section 4657 from the proposition that the "question of fraudulent intent is one of fact and not of law."

7. The error of charging that, if an assignee for the benefit of creditors had possession of the assigned property when seized by a sheriff, the assignee's rights thereto were not impaired by the fact that he did not take possession immediately after the assignment was made, is not prejudicial, where the evidence conclusively shows that in fact possession was taken immediately after the assignment. CORSON, P. J., dissenting.

(Opinion filed Nov. 9, 1897.)

Appeal from circuit court, Lake county; Hon. JOSEPH W. JONES, Judge.

Conversion. Plaintiff had judgment, from which, and from an order denying their motion for a new trial, defendants appeal. Affirmed.

The facts are stated in the opinion.

*C. O. Bailey, J. H. Voorhees, Hosmer H. Keith, A. B. Kittredge,* and *Miller, Noyes, Miller & Wahl,* for appellants.

The assignee represents the creditors and cannot at the same time be the agent of the assignor and hold possession for the assignor. Bank v. Stevens, 39 N. Y. S. 298; Howard v. Dwight, 8 S. D. 398, 66 N. W. 935; Swiggett v. Dodson, 17 Pac. 595; Wilcox v. Jackson, 4 Id. 966; Doak v. Brubaker, 1 Nev. 218; Hale v. Sweet, 40 N. Y. 97; Flanagan v. Wood, 33 Vt. 332; Buhl Iron Works v. Teuton, 35 N. W. 804; Hurlburd v. Bogardus, 10 Cal. 519; Chester v. Bower, 55 Id. 46; Moore v. Shaw, 40 Pac. 829.

*T. B. McMartin,* for respondent.

The retention of the possession of goods by the assignor after voluntary assignment in trust for creditors, with the permission of the assignee or his vendees, does not make the transfer of the goods fraudulent *per se.* Klapp's Assignees v. Shirk, 13 Pa. St. 590; Fitler v. Maitland, 5 W. & S. 307; Seal v. Duffy, 4 Barr. 274.

FULLER, J. This cause, now engaging our attention for the third time, is based upon a claim of wrongful conversion,

and was instituted by plaintiff, the assignee of an insolvent corporation, against the defendant sheriff and his co-defendants, who are attaching creditors, to recover the value of a large amount of personal property seized and sold on execution in satisfaction of their demands against the assignor. This appeal is by the defendants from a judgment of $27,182.70 in favor of plaintiff, and from an order overruling a motion for a new trial. In our former opinion, reported in 2 S. D. 596, 51 N. W. 706, and again, on rehearing in 4 S. D. 237, 55 N. W. 931, the facts are fully stated; and some of the legal propositions here discussed in the briefs of counsel are there determined, and which, so far as applicable to the questions now presented, will govern as the law of the case. Bank v. Gilman, 3 S. D. 170, 52 N. W. 869; Lumber Co. v. Mitchell, 4 S. D. 487, 57 N. W. 236; Tanderup v. Hansen, 8 S. D. 375, 66 N. W. 1073.

As this court must act upon and treat as a verity, the bill of exceptions settled in the court below, and is without jurisdiction to change the record certified on appeal as prescribed by law, we decline to grant appellants' motion to amend the bill of exceptions to conform to an affidavit submitted therewith, and upon which the application is based. Cluck v. State, 40 Ind. 263; 3 Enc. Pl. & Prac. 502.

In support of their claim that the assignment for the benefit of creditors effected January, 10, 1890, upon which respondent relies, was not made in good faith, but fraudulently, appellants offered in evidence a mortgage, executed by the assignee and his wife, dated December 14, 1894, covering a quarter section of land which was occupied as a government homestead by the assignee and his family at the time the deed of assignment was executed, but upon which a small dwelling house and some fences had been built, apparently for the convenience of the corporation, and at its expense, while solvent, with the understanding that the respondent, who was one of its officers, would convey the land to the corporation as soon as final proof was made, and title from the United States obtained. For the same

purpose, and by the introduction of a tax deed dated October
11, 1894, appellants offered to prove that respondent had per-
mitted 160 acres of unincumbered land included in the assign-
ment to be sold for delinquent taxes, and that the certificate
had been assigned to a relative of the wife of respondent, to
whom the deed was executed by the county treasurer. They
also offered to show that a mortgage for $2,500, bearing date
March 10, 1885, executed by the corporation, upon certain
lands subsequently transferred by the assignment, was fore-
closed, and a sheriff's deed executed, on the 16th day of Jan-
uary, 1893, to the above-mentioned relative, as the assignee of
the certificate of sale. The foregoing testimony was very
properly excluded. By attaching and selling on execution all
the available assets of the insolvent corporation, appellants
rendered it impossible for respondent to pay the taxes and
mortgage indebtedness; and the mere fact that the land, as
usual in such cases, brought much less at tax and foreclosure
sales than its estimated value, has no tendency to prove fraud
in the inception of the assignment made for the benefit of cred-
itors years before. Mere conjectures founded upon alleged
statements not made or assented to by the immediate parties to
a deed, and which may be fairly attributed to honest motives,
are wholly insufficient to establish the existence of a conspiracy
to defraud creditors by a general assignment purporting to be
for their exclusive benefit. Ruled by the principle that a con-
veyance valid when made remains so, the courts have uniformly
held that an assignment for the benefit of creditors, free from
fraud in its inception, duly executed, and of record, is not in-
validated by subsequent fraudulent acts. Goodwin v. Kerr, 80
Mo. 276; Wilson v. Berg, 88 Pa. St. 167; Browning v. Hart, 6
Barb. 91; Sullivan v. Smith, 15 Neb. 476, 19 N. W. 620. All
testimony rejected has been carefully considered, and we find
nothing indicating fraud to which the assignor and assignee
where privies, or tending, however faintly, to reflect a back-
ward light by which to discern the original intent of the par-

ties to the assignment, which, if prompted by honest motives and perfected in good faith, remains unimpaired and in full force.

The contention of appellants that no sufficient delivery and change of possession are shown by the evidence, and that the court committed reversible error in its charge to the jury with reference thereto, is neither sustained by the law, nor justified by the facts which the record discloses. It is shown that practically all the available assets of the insolvent company consisted of valuable horses, cattle and farm machinery, all of which were kept upon a ranch which the corporation owned, and concerning which respondent testified, in substance, that when the assignment was made he was living in a cottage about 60 rods from what was known as the "Ranch House," situated near the barn where the horses and cattle were kept; that, after accepting the trust under the deed of assignment, he moved into this house, and placed a foreman in charge, on the day the assignment was made, and told the storekeeper furnishing supplies to continue the account, and he would attend to the payment of the same. Concerning the horses, cattle, and machinery, the witness further testified: ".I ordered the boss to keep them under lock and key, and place the machinery in the barns, and to lock it up. I know of my own knowledge that it was locked up. It was not in the habit of being locked up when the ranch had it. I think I bought the locks. I nailed up the doors not opened frequently, and put on locks on those that must be opened. All the horses and cattle belonging to the ranch were in the barns at the time. After I took charge out there the stock and property of the ranch was seized by Sheriff Lee, the sheriff of Lake county, the defendant in this case. I saw him out there. He directed me to open the doors, and I refused to do it; and he took a lever of some kind, and pried open the doors, and went in and took possession, and placed a man in charge of the stock." Cross-examination: ''I was sworn and examined as a witness

at the last trial of this case.    I went out to the ranch the same
night the assignment was made,—either that night or the next
morning.    I was there nearly every night for the next few
days.    I was out there and stayed over night on several occa-
sions, and came back to Madison.    I did not have any work to
do at the barn.    Upon the former trial I testified that I ar-
ranged for a man to take care of the property upon the execu-
tion of the assignment, as I was unable to be there for a few
days personally.    And I sent notice to the employes of my ap-
pointment as assignee."    As an assignment for the benefit of
creditors imports a "valuable consideration," in the highest
sense attributable to the expression, there is certainly no ne-
cessity for invoking more stringent rules as to formal acts of
taking immediate possession under the deed than govern in
cases of ordinary purchase and sale; and in our opinion there
was, in contemplation of Section 4657 of the Compiled Laws,
an immediate delivery and an actual and continued change of
possession.    Morrison v. Oium, 3 N. D. 76, 54 N. W. 288; Sul-
livan v. Smith, supra.    Manifestly, there was evidence, either
for the court or jury, sufficient to show that the transfer was
"accompanied by an immediate delivery and followed by an ac-
tual and continued change of possession"; and appellants are
certainly in no position to urge that the court should have de-
clared the assignment fraudulent and void, as a matter of law,
because no change of possession accompanied the transfer.

The instruction given at the request of appellants' counsel
is in part as follows:    "If you shall find from the evidence in
this case that the assignment made by the La Belle Ranche
Horse-Importing Company to the plaintiff, George L. Wright,
was not accompanied by an immediate delivery of the property
assigned to the assignee, and followed by an actual and con-
tinued change of possession of such property, then that such
assignment was fraudulent and void, as against the creditors of
the said assignor, and your verdict should be for the defend-
ants."    Upon its own motion the court further charged "that,

if Wright obtained and held exclusive possession of that property at the time that the sheriff levied upon it and took away the property, then the delivery of the possession was sufficient, within the meaning of the law, to protect the rights of the plaintiff in regard to that property, even if he did not take possession immediately after the execution of the deed of assignment." Considered in a light most favorable to appellants, this utterance of the court, at variance with the instruction given in their behalf, amounts to no more than a withdrawal of a mixed question of law and fact from the consideration of a jury, and in view of the undisputed testimony the court would have been justified in holding the delivery and change of possession sufficient as a matter of law. A finding by the jury to the contrary would have been arbitrary, and unsupported by the evidence. Fraud, actual or constructive, is never presumed, in the absence of evidence or facts essential to its existence; and, in order to justify a conclusive presumption of the fraudulent and void transfer of personal property to which section 4657 of the Compiled Laws relates, the burden was upon appellants to show that the assignment was not accompanied by an immediate delivery and followed by an actual and continued change of possession. The facts being undisputed, the question was one of law, which the court might properly determine. Among the many good reasons why the court should declare the legal effect of undisputed evidence relating to such matters is that ordinary jurors are not learned in the law, nor so well prepared to determine the intention of the legislature by the use of the expression "immediate delivery followed by actual and continued change of possession," as applied to a given state of facts. Moreover, cases within the statute containing the above quotation are expressly excepted from the proposition that the "question of fraudulent intent is one of fact and not of law." Comp. Laws, § 4659, Furthermore, assuming the construction complained of to be, as an abstract proposition of law, erroneous, appellants could sustain thereby no injury, for the reason

that there was in the entire record neither a fact nor circumstance tending to support an inference or arouse a suspicion that Wright did not obtain and hold exclusive possession of the property, prior to its seizure, by virtue of the attachment proceedings. As a complete failure to comply with the provisions constitutes a fraud in law, without regard to the intent of the parties, and consequently a question for the court to decide, so, when the undisputed probative evidence shows an immediate delivery and actual and continued change of possession, a valid transfer of property stands proved, as a matter of law, in contemplation of the statute, and there is nothing for the jury to determine.

The evidence as to the time and manner of preparing and filing the inventory, including the substitution of Schedule G, honestly omitted therefrom by an excusable mistake of fact, being substantially the same as that disclosed by the former record, we adhere to our former conclusion with reference thereto, and sustain the inventory as valid and effectual for all the purposes of the assignment, and refer to the original opinion (2 S. D. 596, 51 N. W. 706), and that upon rehearing (4 S. D. 237, 55 N. W. 931), where the facts are stated and the law announced.

Without further recital of the evidence, all of which has received regardful attention, we conclude that the charge based thereon was not prejudicial to appellants, and that the jury was justified in finding that no fraudulent motive entered into the creation of the assignment, which was intended to be in good faith for the benefit of creditors, and that the court might have found from the uncontroverted testimony such an immediate delivery of the property, followed by such actual and continued change of possession, as the statute, under the circumstances of the case, required. The judgment appealed from is affirmed.

CORSON, P. J., dissented.