## STATE v. RUTH.

Where in an action by the state against a commissioner of school lands to
    recover for failure to make certain estimates as to the permanent
    school fund, precluding its loan and a consequent loss of interest, it is
    determined on an appeal that the state could not recover more than

nominal damages without proof that the money would have been loaned had it not been for the commissioner's failure to make the estimate, and a judgment on a new trial is entered pursuant to such decision, on a subsequent appeal the judgment will not be reversed on the theory that the commissioner by failure to distribute the permanent school fund among the several counties which would have been chargeable with interest, caused a loss in interest, for which he was liable.

(Opinion filed December 5, 1900.)

Appeal from circuit court, Hughes county. Hon. Loring E. Gaffy, Judge.

Action of the State of South Dakota against Thomas H. Ruth to recover for failure to perform certain official duties. From a judgment in favor of the state for nominal damages, it appeals. Affirmed.

*John L. Pyle,* Atty. Gen., and *Alva E. Taylor,* Asst. Atty. Gen., for the state.

*Aikens & Judge,* for respondent.

Haney, J. When this action was commenced the complaint contained four counts. A demurrer to the complaint was sustained. This court upon appeal sustained the court below, except as to the second count. Thereafter the second cause of action came on for trial, and the circuit court directed a verdict in favor of the plaintiff for nominal damages, and the plaintiff appealed.

In its former decision this court said: "The complaint contains the following material facts, after eliminating legal conclusions and unnecessary repetitions. * * * Second cause of action: Defendant, as commissioner of school and public lands, without cause, willfully and negligently failed to make any estimate on or before May 10, 1893, of the amount of permanent school and other educational funds which would be in possession of the state treasurer and uninvested July 1st thereafter. He further, negligently and without

cause, failed to notify the county auditors of the state of any apportionment of such estimates. In consequence of such negligence no applications for loans of such funds were received prior to July 1, 1893. June 30, 1893, $75,526.93, belonging to said funds, was in possession of the treasurer, and wholly uninvested July 1, 1893. There were numerous demands for the loan of said funds upon good security in the state, and opportunity for loaning the same. By the exercise of reasonable diligence and care in the performance of defendant's official duties, said fund could have been loaned in the manner and upon the security required by law on July 1, 1893. Defendant willfully neglected to do anything whatever in reference to the apportionment and distribution of the aforesaid funds until October 3, 1893, when the entire amount was apportioned and notice thereof sent to the county auditors. By reason of such negligence, it is claimed the public schools sustained a loss, equal to the interest on the aforesaid sum at 6 per cent. per annum, from July 1, 1893, to October 3, 1893, amounting to $1,158.08, and the plaintiff has been damaged to that extent." Concerning the allegations of the second count, thus construed, this court said: "It is charged in the second count that by reason of defendant's failure to make an estimate of the permanent fund which would be on hand July 1, 1893, and notify county auditors thereof, $75,526.92 remained uninvested until October 3d, causing a loss of interest, which would otherwise have been received, to the amount of $1,158.08. The constitution provides in what class of securities the fund shall be invested, and requires continuous investment as far as possible. Article 8, § 11. It was defendant's duty to make an estimate on or before May 10th, apportion the amount thereof among the organized counties in proportion to population, and forthwith notify the county auditors of the amount so apportioned. Laws 1893, Chap. 144, § 1. He had no alternative but

to act. In making the estimate, he was, of course, required to exercise judgment and discretion, but the law did not permit him to decide whether or not any estimate should be made within the time specified by the statute. We think in failing to act at all, he disregarded a plain provision of the law, and failed to perform a merely ministerial duty. It is the nature of the particular duty, and not the character of the office which determines whether or not a duty is ministerial. It is alleged that in consequence of defendant's failure to perform this duty a certain sum belonging to the permanent fund remained for a time uninvested, which otherwise would have drawn interest, and thereby caused a loss to the income fund of $1,-158.08. We think this was a loss to one of the educational funds of this state, through the negligence of an officer controlling and managing the same, which the plaintiff is required to make good, and which it can recover, in its capacity of trustee. Upon a trial it may appear that this loss of interest did not result from defendant's failure to make an estimate. It is somewhat doubtful if the facts, as alleged, show that it did; but the pleading must be construed liberally, and, in any event, plaintiff is entitled to nominal damages upon the facts stated in this count." State v. Ruth, 9 S. D. 84, 68 N. W. 189. In his answer, defendant admits that he was commissioner, as alleged in the complaint, denies all other allegations therein, and alleges "that, during all the time said defendant held the office of commissioner of school and public lands, as alleged in the complaint herein, he conscientiously, and to the best of his knowledge and ability, fulfilled and performed the duties of said office, and that if the state of South Dakota, or the public schools of said state, have lost any money falling to said public schools, the same was lost through the defalcation of the officer of said state who was charged by the law with the custody of said funds." Upon the trial plaintiff offered evidence tend-

ing to show that there was $30,367.46 in the state treasury to the credit of the permanent school fund at the opening of business on May 10, 1893, and $86,159.29 on July 1, 1893; that no apportionment was made until October 3, 1893; that no reason existed why it should not have been made when required by law—and thereupon rested. No evidence was introduced or offered by the defendant.

It is now contended that the money in the state treasury credited to the permanent school fund should have been distributed among the several counties, regardless of applications for loans; that any county which could not loan the amount assigned it would have been compelled to return the same, with interest thereon at the rate of 6 per cent. for 60 days; and that therefore defendant's failure to perform his official duty necessarily caused a loss to the income fund of a sum at least equal to 6 per cent. for 60 days upon the amount in the state treasury when the apportionment should have been made. This theory was not suggested upon the former appeal, or, if it was, it received no attention in our former decision. The facts upon which that decision was based differ in only one respect from the facts upon which the present decision must rest. On the former appeal it was admitted by the demurrer that there was money in the state treasury; that defendant failed to perform his duty, and that there were numerous demands for the loan of said funds upon good security in the state, and opportunity for loaning the same; and that, by the exercise of reasonable diligence and care in the performance of defendant's official duties, such money could have been loaned in the manner and upon the security required by law on July 1, 1893. It now appears that there was money in the treasury, and that defendant failed to perform his duty; but there is no evidence to show any demands for the loan of said funds, or any opportunity for loaning the same, nor is there any evidence tending to show that said funds could have

been loaned in the manner and upon the security required by law on July 1, 1893. In our former decision it was clearly indicated that plaintiff could not recover more than nominal damages in the absence of evidence tending to prove that the money would have been loaned had it not been for defendant's failure to make the estimate and apportionment. The law as thus announced should be adhered to upon this second appeal in the same action, although, if convinced it was erroneously stated, we might refuse to follow the decision in another action. Sherman v. Thresher Co. 13 S. D. 95, 82 N. W. 413; Wright v. Lee, 10 S. D. 263, 72 N. W. 895; Bank v. Gilman, 3 S. D. 170, 52 N. W. 869; Lumber Co. v. Mitchell, 4 S. D. 487, 57 N. W. 236; Tanderup v. Hansen, 8 S. D. 375, 66 N. W. 1073. After the former appeal the action was remanded for further proceedings consistent with the decision of this court, which became a part of the record returned to the court below. That court having, as we think, faithfully followed the course prescribed by this court, its action should be approved. To reverse it upon a theory of law entirely different from that announced upon the former appeal would be alike unjust to the learned judge who presided at the trial and to the defendant, both of whom had a right to rely upon the deliberate judgment and direction of this court as to what facts were essential to a recovery of more than nominal damages. Therefore, without considering the merits of the state's contention as to the liability of the counties to pay interest upon funds not loaned, we conclude that the court below properly applied the law of this case to the facts established upon the trial, and its judgment is affirmed.