## WRIGHT V. LEE *et al.*

1. The question of the right of a duly organized foreign corporation to do business in this state without having complied with the statutes of this state as to filing an authenticated copy of its articles of incorporation, etc., can not be raised or determined collaterally.

2. Transacting business in the state by such noncomplying foreign corporation is a usurpation of power by such corporation, but with the state rests the right to elect whether it will acquiesce in such usurpation, or dispute and prevent it.

3. Sections 5345, 5346, Comp. Laws, providing that the remedies heretofore reached by writ of *quo warranto,* and proceedings by information in the nature of *quo warranto,* might be obtained by civil action, as provided in said sections, were not repealed by the adoption of the state constitution.

4. The action provided for in said sections is available against a foreign corporation. "Annulling the existence of a corporation," as expressed in said section, must be taken to mean, in respect to a foreign corporation, annulling its existence and life within the limits of the state.

5. But even if said sections were repealed, or if the action provided by them were not available against a foreign corporation *quo warranto* proceedings would still remain and be entirely adequate for the maintenance of the authority of the state against a usurping foreign corporation.

6. A corporation duly organized under the laws of another state, and publicly doing business in this state, without having complied with the statutory requirements above referred to, is, until its authority is challenged by the state, a *de facto* corporation.

7. In a general assignment by a corporation, the inventory required by the statute may be verified by its secretary, although the board of directors had authorized the president and secretary to execute the assignment; the object of the statute being fulfilled when the justness and truthfulness of the inventory is guarantied by the oath of the assignor, in the only way in which it, as a corporation, could verify the same, to-wit, by one of its managing officers.

8. Such inventory does not necessarily show upon its face that it does not contain all the creditors of the assignor because it shows certain of its lands are subject to mortgages, while the holders of such mortgages do not appear as creditors; as the assigning corporation may have bought such property subject to the mortgages, without assuming to pay them, or becoming debtors to the holders of them.

9. Section 4660 *et seq.*, Comp. Laws, prescribe the manner of making, and declare tho legal effect of, an assignment made under such provisions. It must be made "in good faith," and when made, is subject to the code provisions "relative to trusts and fraudulent transfers."

10. An assignment not made "in good faith," or which would be invalid un-der the code provisions "relative to trusts and fraudulent transfers," even though modally within the letter of the statute, is not effectual to protect the property assigned against tho attacks of creditors by at-tachment.

11. Section 4675, being, in respect to the provisions to be now noticed, an amendment subsequently attached to tho law, and providing that all proceedings under the law should be subject to the supervision of the district court, and authorizing the judge of said court, upon petition of creditors showing causo therefor, to interfere, require an accounting, remove the assignee for cause, appoint a new one, etc., was not intended to, and does not, radically change the plan and theory of the original law, but adds a new feature to it, important, but still incidental.

12. Whether, after tho power of the court authorized by said Section 4675 has been actively called into exercise, as it is provided it may be for causo shown, the assigned estate is in *custodia legis*, and thus protected from attachment, *quaere*.

(Syllabus by the court.   Opinion filed Oct. 18, 1893.)

Appeal from circuit court, Lake county.   Hon. Frank R. AIKENS, Judge.

This case was first decided by this court March 16, 1892. In an opinion found in 2 S. D. 596, the court reversed the judg-ment of the lower court in favor of the plaintiff.   A rehearing was subsequently granted upon the petition of both respondent and appellant.   This opinion is upon the rehearing.   Former decision adhered to.

*Keith & Bates; Bailey & Voorhees; Miller, Noyes & Miller,* and *Joy, Hudson, Call & Joy,* for appellants, the petitioners for re-hearing.

The La Belle Ranche Horse Importing Company not hav-ing complied with the laws of this state in relation to the trans-action of business by foreign corporations, the pretended as-signment made by it within this state is consequently void. Comp. Laws, § 3190; Comp. Laws, § 3191; Art. 46, xvii, Sec.

6, S. D.; Bank of Augusta v. Earle, 13 Pet 588; Runyan v. Lessee of Coster, 14 Pet. 122; Paul v. Virginia, 8 Wall. 168; Ducat v. City of Chicago, 10 Wall. 410; Liverpool Insurance Co. v. Massachusetts, 10 Wall. 566; Phenix Ins. Co. v. Commonwealth, 5 Bush. 68; Railroad Co. v. Coffee County, 6 Kan. 245; Smith v. Silver Valley Min. Co., 10 Am. & Eng. Corp. Cas. 1; Thompson v. Waters, 25 Mich. 214; Hilles v. Parrish, 14 N. J. Eq. 380; Hill v. Beach, 12 N. J. Eq. 31; Carroll v. City of St. Louis, 67 Ill. 568; Rece v. Newport, etc. Co., 32 W. Va. 164; 2 Morawetz on Corp. §§ 958-961; 8 Am. & Eng. Enc. of Law, pp. 331-335; *In re* Comstock, 3 Sawyer, 218; Semple v. Bank of British Col., 5 Sawyer, 35; Ætna Ins. Co. v. Harvey, 11 Wis. 412; Oregon Invest. Co. v. Rathbun, 5 Sawyer, 32; Bank of British Col. v. Page, 6 Ore, 431; Cincinnati Ass. Co. v. Rosenthal, 55 Ill. 85; Pierce v. People, 106 Ill. 11; W. U. Tel. Co. v. Mayer, 28 Ohio St. 521; Rising Sun Ins. Co. v. Slaughter, 20 Ind. 520; Hoffman v Banks, 41 Ind. 1; Farmers Ins. Co. v. Harragh, 47 Ind. 236; Wood, Etc. Co. v. Caldwell, 54 Ind. 271; Haverhill Ins. Co. v. Prescott, 42 N. H. 547; Ins. Co. v. Wright, 55 Nt. 520; Roche v. Ladd, 1 Allen, 436; Nat. Mut. F. Ins. Co. v. Pursell, 10 Allen, 231; Williams v. Cheney, 3 Gray, 215; Springfield Ins. Co. v. Louisville Etc. Co., 9 Bush, 590; Farrier v. New Eng. Mtg. Co., 7 So. Rep. 200; New Hope Dela. Etc. Co. v. Poukeepsie, 25 Wend. 648; People v. Fire Assoc. 92 N. Y. 311; People v. Horn Sil. Min. Co., 105 N. Y. 76; Thorne v. Travelers Ins. Co. 80 Pa. St. 15; State v. Fosdick, 21 La. Ann. 434; Goldsmith v. Home Ins. Co., 62 Ga. 379; List v. Pennsylvania, 118 Pa. St. 322; Morawetz on Priv. Corp. §§ 661-605; 1 Waterman on Corp. p. 551; Cook's Stock and Stockholders, § 694; 8 Am. & Eng. Enc of Law, pp. 338-342; 26 Cent. Law Journal, p. 623.

The court below erred in holding that the La Belle Ranche Horse Importing Company was a *de facto* corporation. Corporations incorporated in one state for the purpose of transacting business in another, are looked upon with great disfavor

by the courts. Railway and Trust Co. v. Board of Co. Commissioners, 6 Kan. 245; Hill v. Beach *et al.*, 12 N. J. Eq. 31; Empire Mills Co. v. Alston Grocery, 196 Co. 15 S. W. Rep. 505.

The provisions of Sec. 4668, Comp. Laws, relating to an affidavit to the inventory upon assignment are mandatory; no sufficient affidavit was made to the inventory in this case. Farmer v. Cobben, 29 N. W. Rep. 12; Auley v. Osterman, 65 Wis. 118; Lookout Bank v. Noe, 86 Tenn. 21; 5 S. W. Rep. 433; Scheibler v. Mundiger, 86 Id. 675; 9 S. W. Rep. 33; Haben v. Harshaw, 59 Wis. 403; Mather v. McMillon, 60 Wis. 546; Goll v. Hubbel, 61 Wis. 293; Auley v. Osterman, 65 Wis. 118; Fuhrman v. Jones, 68 Wis. 497; Hanson v. Dunn, 45 N. W. 619; Shackman v. Schleuter, 46 N. W. 342; Fort v. Martin, 1 S. E. Rep. 223; Albany, Etc,, Works v. Southern Ag. Wks. 76 Ga. 135; Turnipspeed v. Schaeffer, 76 Ga. 109; McMillan v. Knapp, Id. Ga. 171; Crittendon v. Coleman, 70 Ga. 130; Coggins v. Stephens, 73 Ga. 414; Juliand v. Rathbone, 39 N. Y. 369; Cohen v. Barton, 21 At. Rep. 63; Kingman v. Barton, 24 Minn. 295; De Graw v. King, 9 N. W. Rep. 636; Beardsley v. Frame, 24 Pac. Rep. 721; Heeland v. Hoagland, 7 N. W. Rep. 86; Jaffray v. McGhee, 17 Otto, 361; Sutherland on Stat. Const. p. 592.

The court below erred in holding the inventory to be in compliance with the assignment laws of this state. First: Because of the insertion of a schedule after it was filed, and second: Because the inventory does not contain the matter required by the statute. Fuliand v. Rathbone, 39 N. Y. 369; Haben, Assignee, v. Harshaw, 59 Wis. 403; Fort v. Martin Tobacco Co., 77 Ga. 111; Beardsley v. Frame, 24 Pac. Rep. 721; Cohen v. Barton, 21 Atl. Rep. 63; Hanson v. Dunn, 45 N. W. Rep. 319.

Under the laws of the State of South Dakota, property assigned for the benefit of creditors is not in *custodia legis*. Lapp v. Van Norman, 19 Fed. Rep. 406; Rinchey v: Stryker, 28 N. Y. 45; Hess v. Hess, 117 N. Y. 306; Lux v. Davidson, 9 N. Y. 866; Loos v. Wilkinson, 110 N. Y. 195; Zimmerman v. Willard, 2 N. E. Rep. 70; Lee v. Taber, 8 Mo. 322; McClurg v. Leckey,

3 Penrose & W. 83; Irwin v. Keen, 3 Wharton 347; Lane's App. 82 Pa. St. 289; *In re* Wilson, 4 Barr 430; Seal v. Duffy, 4 Barr 274; Mitchell v. Stiles, 13 Pa. St. 306; Bishop v. Hart's Trustees, 28 Vt. 71; Aspinwall v. Jones, 17 Mo. 209; Carr v. Van Hosen, 26 Hue. 316; Massey v. Noyes, 26 Vt. 462; Hutchinson v. Lord, 1 Wis. 286; Hardcastle v. Fisher, 24 Mo. 70; Keep v. Sanderson, 2 Wis 42.

*McMartin & Carlin, Contra.*

KELLAM, J. This case is now before us upon rehearing. The original opinion is published in 2 S. D. 596, and in 51 N. W. Rep. 706, where the facts are fully stated. Appellants asked and were allowed a rehearing for the further discussions of the following proposition: (1) The court erred in holding that the question of noncompliance with the statute in relation to foreign corporations could not be inquired into collaterally; (2) in holding that the La Belle Ranch Horse Importing Company (respondent's assignor) was a defacto corporation; (3) in holding that a sufficient affidavit was made to the inventory; (4) in holding the inventory to be in compliance with the provisions of the assignment laws of the state.

So far as they are pertinent to either of the questions thus presented, the facts are not in dispute. The assignor, the La Belle Ranch Horse Importing Company, was a foreign corporation, organized under the laws of the state of Minnesota, and it had never complied with the provisions of Sections 3190–3192 of the Comp. Laws, by filing with the secretary of the territory of Dakota, or with the secretary of state of the state of South Dakota, a copy of its articles of incorporation, or by the appointment of an agent residing in the territory authorized to accept service of process. The contention of appellant was and is that, without compliance with these provisions, such foreign corporation was incapable of transacting business in this jurisdiction, and that every contract it attempted to make was

VOL. 4, S. D.—16

void, and should be so declared upon a showing of such non-compliance. Neither side, of course, questions the inherent power of the state to exclude foreign corporations from transacting business within its limits, subject to the constitution and laws of the United States, as declared in such cases as Bank v. Earle, 13 Pet. 588; Paul v. Virginia, 8 Wall. 168; Carroll v. East St. Louis, 67 Ill. 568; Doyle v. Insurance Co., 94 U. S. 535; Thompson v. Waters, 25 Mich. 214; People v. Association, 92 N. Y. 311. The question here is not as to the existence of the power, but to what extent, if at all, the state has undertaken to exercise it, and what is the legal effect of what it has done. The constitutional provision which, it is also claimed, makes void any attempt of this foreign corporation' to transact business in this state under the conceded conditions of this case, is as follows: "No foreign corporation shall do any business in this state without having one or more known places of business and an authorized agent or agents in the same, upon whom process may be served." Section 6, Art. 17, Const. The admission of the respondent is that his assignor, a foreign corporation, had not filed its articles of incorporation with the secretary of the territory or of the state, nor filed an appointment of an agent with such secretary, or in the office of the register of deeds of the county in which its principal place of business is located. It will be at once observed that the constitutional provision does not require either of these things to be done. Its requirement is satisfied if such foreign corporation had in fact a known place of business, and an authorized agent, upon whom process might be served in this state. It was not required of respondent, as assignee, in order to validate the acts of his assignor, that he show that such assignor had met the prescribed conditions. That he had not done so, if material at all, was defensive, and must come from the other side. Sewing Machine Co. v. Moore; 2 Dak. 280, 8 N. W. Rep. 131; Lumber Co. v. Keefe, (Dak.) 41 N. W. Rep. 743. The admission did not negative the conditions named in the constitution. It was not ad-

mitted by plaintiff, nor proved by defendants, that such corporation did not in fact have a known place of business and an authorized agent in this state, but only that it had not filed its articles of incorporation, nor filed any appointment of an agent; hence it does not appear but that respondent's assignor was fully qualified to transact business in this state, so far as the constitutional provision controls.

Section 3190, Comp. Laws, is: "No corporation created or organized under the laws of any other state or territory shall transact any business within this territory  *  *  *  until such corporation shall have filed in the office of the secretary of the territory a duly authenticated copy of its charter or articles of incorporation, and shall have complied with the provisions of this article," etc.  Section 3192 names the other provisions to be complied with, to-wit, the appointment of a resident agent authorized to accept service of process, and the recording of the same in the office of the secretary of the territory, (now state) and of the register of deeds of the county wherein such agent resides.  It is specifically admitted that this was not done.  The defendants claimed below, and, as appellants, they claim here, as already observed, that the consequence of such non-compliance was to render void and of no effect every attempted act or contract of such non-complying corporation. Upon the former examination and decision of this case, we were impressed with the great diversity of views expressed by different courts upon this question, under constitutional and statutory provisions like our own; but a closer study satisfies us, not only that the conclusions of the courts are irreconcilable with each other, but that no general controling principal can be deduced from the judgments or the reasonings of the cases. In some instances, as in Bank v. Paige, 6 Or. 431, it is argued that the evident legislative intent was to prevent disqualified foreign corporations from transacting business in that state, and that, as no specific penalty was prescribed as a punishment for a violation of such prohibitory law, the legislature must

have understood and intended that the usual result would follow an attempt to make an unlawful and prohibited contract, to-wit that it would be void and unenforceable, as otherwise there would be no penalty, and the law would be simply an expression of legislative opinion, without means for its enforcement; while in such cases as Woods v. Armstrong, 54 Ala. 150, followed in Dudley v. Collier, (Ala.) 6 South Rep. 304, the fact that a penalty is provided in the law is regarded as important, if not controlling, in establishing the severely prohibitory character of the law, and in making the contract void; while in still other cases, as Lumber Co. v. Thomas, (W. Va.) 11 S. E. Rep. 37, the presence of a penalty in the law is taken to mean that the legislature intended no other forfeiture or disadvantage to result from noncompliance with the law, and the contract of the noncomplying foreign corporation was held good. With these cases, and many others of which they are simply representative, before us, we conclude that a collation and attempted analysis of them would be profitless in developing from them any general principal or rule adopted by the courts in the construction of statutes of this kind. The only proposition upon which all agree is the elimentary one that the statute should be given such effect as the legislature intended. It certainly was not intended by it to adopt or announce a policy of excluding or even discouraging foreign corporations from transacting business in this territory or state, for it named very easy conditions upon which their right and qualification might be established and made unquestionable. The leading thought and primary design of the legislature undoubtedly was to protect the people of the state from imposition and loss at the hands of alien corporations, whose responsibility, character, powers and home were unknown to them. They must file articles of their incorporation, so that their powers and the character of the corporation might be known to those who might have occasion to deal with them, and they must publicly announce upon whom as their agents, process might be served,

if found necessary to bring suit, and thus bring themselves within the jurisdiction of the courts. Until the foreign corporation does this, it has no legal right or standing to transact business in the state; but it does not follow that it was intended that every attempt to do so should be void without regard to its effect upon either party. The statute was designed to place foreign corporations, in respect to a knowledge of their powers, the object of their incorporation, and the jurisdiction of our courts within the state over them, in the same position as domestic corporations. In the case either of domestic or foreign corporations, the state names the conditions upon which it may transact business. It does it in its sovereign capacity, as the conservator of the rights and best interests of its citizens. The state, which alone can name the conditions, can alone enforce their observance. The statute in this case is directed, not against the contract made or the act done, but against the party acting. The wrong done in disregarding the law is against the state, and not against the individual. It may have been to the advantage of the individual. Transacting business in the state without compliance with the statutory conditions is a usurpation of power by the corporation, but with the state rests the right to elect whether it will acquiesce in such usurpation, or dispute and prevent it. This is the rule in respect to a domestic corporation, certainly where it is conceded there was legal authority for its creation. Ang. & A. Corp. §§ 94, 636; Lehman v. Warner, 61 Ala. 455; Cochran v. Arnold, 58 Pa. St. 399; Baker v. Backus, 32 Ill. 79; Humphreys v. Mooney 5 Colo. 282; North v. State, 107 Ind. 356, 8 N. E. Rep. 159; Doyle v. Petroleum Co., 44 Barb. 239. And if this is the rule in respect to domestic corporations, and the object and purpose of this law is as far as practicable to make the foreign corporation within the state as a domestic one, why should not the rule apply, leaving to the state, and not to an individual litigant, who may not even be a resident of the state, the election of insisting upon an entire compliance with the law, or a waiver of

such compliance? We think it should, and in this conclusion we are directly supported by the supreme court of North Dakota construing the same law, inherited from the territory by both states. Mill Co v. Bartlett, (N. D.) 54 N. W. Rep. 544. See, also, Grant v. Coal Co., 80 Pa. St. 208.

In our former opinion, it was suggested that the state might proceed under Sections 5345, 5346, Comp. Laws, providing that the remedies heretofore reached by writ of *quo warranto*, and proceedings by information in the nature of *quo warranto*, might be obtained by civil action, as provided in said sections. Against this suggestion, appellant contends that said sections were, by implication, repealed by the state constitution, and that, in any event, they are inapplicable in the case of a foreign corporation. In our judgment neither contention can be maintained. In People v. Association, 84 Cal. 114, 24 Pac. Rep. 277, cited by appellant in support of the theory of repeal, the facts were not as here. There the legislature had expressly abolished the writ of *quo warranto*, and proceedings in the nature of *quo warranto*, and by the same section, and in continuous language, provided that the remedies obtainable under the abolished writ and proceedings might thereafter be obtained by civil actions, in the manner thereinafter provided. Section 802, Code Civ. Proc. 1872. But here the territorial legislature made no attempt to abolish either. Such attempt would have been abortive, if undertaken, for the powers and jurisdiction of the territorial courts were established by the organic act, and included the power and right to issue all common law writs. The civil action provided by these sections was therefore not exclusive, but cumulative. In the California case, however, the legislature abolished the writ, and in the same breath provided a new remedy. The two provisions were evidently intended to be interdependent, so that there might have been reason for holding that the new constitution, which restored the abolished writ, also had the effect of repealing the provision for a substitute; but in that

case even the court did not go to that extent. It simply recognized the fact that such contention might be made, and without passing upon the question, suggested the answer that, even if the claim of implied repeal were allowed, the power of the court was quite as broad under the writ of *quo warranto* as under the statute claimed to be repealed. Repeals by implication are not favored, and we see no reasonable ground for holding that the constitutional provision defining the jurisdiction of the courts created by it repealed the statutory section cited.

Appellant further contends that the civil action provided for by the statutory sections under consideration is not available against a foreign corporation, for the reason that the purpose of the action must be "vacating the charter or articles of corporation, or for annulling the existence of a corporation, and that the courts of this state cannot vacate the charter, or annul the existence of a foreign corporation." If this reasoning is conclusive, what shall be done with the first of the two cited sections,—5345— which declares that the remedies formerly attainable by *qua warranto* proceedings might thereafter be obtained by the civil action provided for by the subsequent sections. This would seem to be a plain declaration by the legislature of the intended scope of these sections and of the action authorized. The jurisdiction of our courts, prior to the enactment of these sections, to control foreign corporation within the state by *quo warranto* proceedings can hardly be questioned; and it is expressly enacted that, if there were such remedy by *quo warranto*, it might now be obtained by civil action. True, the purpose of the action is to "annul the existence of the corporation," but that must be taken to mean its existence within this state. Whenever it attempts illegally to come into this state, and live, and exercise the functions of a living corporation, it may be proceeded against in this civil action and its existence within this state annulled. The Ohio statute is similar to ours, but it has not, like ours, an authoritative declaration of its intended scope, and it is held to apply to foreign and domestic corporations

alike.  State v. Insurance Co., 47 Ohio St. 167, 24 N. E. Rep. 392.  But, even if appellant were clearly right upon both these minor questions, the merits of this controversy upon the major question of whether the validity of the executed acts of a foreign corporation may be investigated and settled in a collateral proceeding for that purpose, remains unaffected; for with the statute authorizing a civil action repealed, *quo warranto* proceedings would still remain, and, as suggested in People v. Association, *supra,* are entirely adequate for the maintenance of the authority of the state against a usurping corporation, whether foreign or domestic.  We might say in passing that the constitutional authority of the supreme and circuit courts to issue writs of *quo warranto,* and to hear and determine the same, must be understood to give such courts jurisdiction of cases in which the information in the nature of *quo warranto* has become a substitute for the ancient writ.  State v. Gardner, (S. D.) 54 N. W. Rep. 606.

The second proposition of appellant in the petition for rehearing is the error of the court in treating the foreign corporation under consideration as a *de facto* corporation.  Appellant's amended answer, upon which this action was tried, alleges "that, at the time of its pretended assignment, the La Belle Ranch Horse Importing Company was a foreign corporation, incorporated under and by virtue of the laws of the State of Minnesota," and then avers its incapacity to make the assignment under consideration, or to do any other business in this state, because it had not complied with the requirements of the statute already noticed as to foreign corporations.  The question, then, is this:  Is a corporation, duly organized under the laws of another state, but doing business in this state without having complied with the statutory conditions named, entitled to be considered and treated as a *de facto* corporation?  If we have correctly decided the first proposition discussed, there can be little doubt as to this.  We have already said that the acts of such a body were valid as corporate acts until such assumption of authority is challenged by the state.  This is, at

least, equivalent to saying that, during the time the state acquiesces in the transaction of business by such foreign corporation, it must be considered and held to be a *de facto* corporation. This case is radically different from Empire Mills v. Alston Grocery Co., (Tex. App.) 15 S. W. Rep. 50 5. There it appeared, and was so stated in the opinion, that the grocery company had never organized at all. The court says: "An examination of the case before us discloses no organization at any time or place." They had no standing as a foreign corporation. Besides, in that case, which was upon demurrer, it was admitted that the purpose of the alleged incorporators was to commit a fraud upon the laws of Texas, where they attempted to do business, and upon Iowa, where they pretended to file their articles. No such facts appear here.

Appellant's third proposition is that the court erred in holding that a sufficient affidavit was made to the inventory. The two respects in which the affidavit in this case is assailed are (1) that it is not made by the assignor, (the corporation,) but by its president, and does not verify its statements according to the best knowledge and belief of the assignor, (the corporation,) but according to the best knowledge and belief of its president, who makes it; and (2) that, as the board of directors had authorized the president and secretary to execute the assignment, it was necessary that both make and assign the affidavit. We are satisfied neither point is good, for reasons stated at length in the former opinion, written by Judge BENNETT. A corporation, could, of course, make no affidavit except by an agent, and no agent could truthfully swear to the best knowledge and belief of any person or persons other than himself. Any attempt to do so would be uncandid and worthless on its face. The object of the statutory provision was to secure an inventory whose justness and truthfulness should be guarantied by the oath and conscience of the assignor. In the

case of a corporation, we think that its president, or its secretary, or any other managing agent, is presumably qualified to make the affidavit.

It is next urged that the court erred in holding the inventory to be in compliance with the provisions of the assignment laws of this state. In the petition for rehearing, appellant represents that but a part of the objections raised against the inventory was considered by the court, or at least discussed in the opinion, and urges upon our present notice that the inventory does not even purport to contain "a list of all the creditors of the assignor;" and it shows upon its face that it does not contain a list of all the creditors. It was not necessary that the inventory should advertise itself as containing all the creditors. It is not so much what it purports to contain as what it does contain that is important. The statute does not require the inventory itself to state that it contains all the creditors. Landauer v. Conklin, (S. D.) 54 N. W. Rep. 322. If we understand appellant's contention, it is that the schedule affirmatively shows that it does not contain all the creditors of the assignor, because it shows that certain of its lands are subject to mortgage liens, while the holders of such liens do not appear as creditors. But, assuming this to be correct, it does not follow that the holder of a claim against the lands is necessarily a creditor of the assignor. The company may have bought and held these lands, subject to the incumbrances referred to, without making itself a debtor to the holder of such incumbrances. It is only "creditors of the assignor" that are required to be listed by the provision of the law under which their objection is made.

It is next suggested, as a defect in the inventory, that it "nowhere specifies the incumbrances on any particular piece of land, giving the name of the party holding the mortgage, his place of residence, the true consideration of the liability, or the place it arose." Without discussing what would be a sufficient compliance as to particularly of detail with Subdi-

vision 7 of said Section 4667, requiring the inventory to show all the assignor's property, "and the incumbrances existing thereon," we content ourselves by saying that it nowhere appears that the incumbrances referred to were upon separate or particular pieces of the lands described. All the incumbrances may have rested upon all the lands. To justify an examination of either of these objections upon the merits would require us to assume facts which are not proved.

Appellant also objects to the inventory of the notes owned and assigned by the assignor, because at the end of this schedule appears the statement: "All the notes in this division No. 2 were listed by the ex secretary and treasurer, George L. Wright, and are in his possession, together with all other papers and books belonging to the corporation." We apprehend it is unimportant who actually makes the list, provided, when made, the assignor adopts it, and verifies it, as required by the statute, which appears to have been done in this case. In construing an assignment for the benefit of creditors under our statute, the same rules apply as in cases of ordinary contracts and conveyances, and, if allowable within its terms, such interpretation and construction should be given to an assignment as will render it legal and operative, rather than that which will render it illegal and void. Landauer v. Conklin, *supra*; Burrill, Assignm. (5th Ed.) p. 480; Townsed v. Stearns, 32 N. Y. 209; Bank v. Dunn, 67 Ala. 381.

We have thus considered, at length, the several points upon which appellant asked to be reheard, and find nothing which leads us to believe we were in error in our former decision.

Upon the part of respondent, the claim is made upon this rehearing that, upon the execution and delivery of this assignment, the property covered by it passed into the custody of the law, and so beyond the reach of attachments, and this contention is based upon Section 4675, Comp. Laws, as follows: "After the lapse of six months from the date of filing his bond, the assignee, on motion of one of the creditors, with ten days'

notice, accompanied by an affidavit of the creditor, his agent or attorney, setting forth his claim and the amount thereof, and that no account has been filed within six months, may be ordered by the court, or by the judge thereof, at any place in his judicial district, to render an account of his proceedings, within a given time, to be fixed by the court or the judge thereof, not to exceed fifteen days. All proceedings under this title shall be subject to the order and supervision of the judge of the district court of the county in which such assignment was made, and such judge may, from time to time, in his discretion, on the petition of one or more of his creditors, by order, citation, attachment, or otherwise, require any assignee or assignees to render accounts and file reports of his or their proceedings, and of the condition of such trust estate, and may order or decree distribution thereof; and such judge may, in his discretion, for cause shown, remove any assignee or assignees, and appoint another or others instead, who shall give such bonds as the judge, in view of the conditions and value of the estate, may direct; and such order or removal and appointment shall in terms transfer to such new assignee or assignees all the trust estate, real, personal, and mixed, and may be recorded in the deed records in the office of register of deeds of any county wherein any real estate affected by the assignment may be situated. And such judge may by order, which may be enforced as upon proceedings for contempt, compel the assignee or assignees so removed to deliver all property, money, choses in action, book accounts, and vouchers to the assignee or assignees so appointed, and to make, execute, and deliver to such new assignee or assignees such deeds, assignments, and transfers as such judge may deem proper, and to render a full account and report of all matters connected with such trust estate. Whenever any assignee so removed shall have fully accounted for and turned over to the assignee or assignees appointed by the judge all the trust estate, and made a full report of his doings, and complied with all orders of the judge touching such

estate, and also whenever an assignee has fully complied with the trust, he may by order of the judge be fully discharged from all further duties, liabilities, and responsibilities connected with the trust.    In either case, he shall give notice by publication in some newspaper of the county, if there be one printed and published therein, if not, in a newspaper published at the capital of the territory, once in each week, for at least three weeks, that he will apply to such judge for such discharge, at a time and place to be stated in such notice, which time shall not be more than three weeks after the last publication of the notice. If, upon the hearing, the judge shall be satisfied that the assignee is entitled to be discharged, he shall make an order accordingly; or if, in the opinion of the judge, anything remains to be done by such assignee, he may require the performance thereof before making such order.    Such order shall have the effect of discharging the assignee and his sureties from all further responsibility in respect to the trust, and such order shall not be refused on account of any failure on the part of the assignee to comply with the formal provision of law, where no loss or damage to any one shall have occurred through such failure.    Whenever the trust estate shall have been taken out of the hands of the assignee by proceedings in bankruptcy in the federal court, the assignee may in like manner be discharged, upon showing that he has fully accounted with the assignee in bankruptcy, and turned over to him the whole of the trust estate. "

We do not think respondent's contention can be maintained. This assignment was made under the statute.    The right to make it is, at the very outset, by Section 4660, secured to the insolvent debtor who, in so doing, acts "in good faith," and such assignment, when made, is expressly declared in the same section to be "subject to the provisions of this code relative to trusts and to fraudulent transfers."    It is only when the assignment is made "in good faith" that it is authorized by, or is under the protection of, the statute; and then, to further se-

cure the rights of creditors, and to open the doors to a searching investigation of the fides of every such transaction, it is expressly provided that when made, even though modally within the letter of the statute, it is still subject to statutory provisions relative to trusts and conveyances. With these authoritative and unambiguous declarations before us as to the intent and purview of this law authorizing and controlling assignments, we must rule against respondent's contention, unless we can find in said Section 4675, and upon which he relies, a reasonably plain indication that the legislature intended to abrogate the fundamental rule of the first section of the law to which we have referred. This section—4675—is a combination of Section 1, Chapter 8 and 9, of the Laws of 1887. Prior to these amendments, the statute (Sec. 2042, 1 Civil Code,) simply provided that the assignee might after six months, on complaint of a creditor, be required to account before the district court of the county where the inventory was filed, "in the manner prescribed by the Code of Civil Procedure." This action was probably taken from the California Civil Code, § 3469, which provided for an accounting "in the manner prescribed by the insolvent Laws of this state." There were no insolvent laws in this territory; hence the necessity for this unintelligible reference to the "manner prescribed by the Code of Civil Procedure." The immediate purpose of these amending sections, now constituting Section 4675, undoubtedly was to provide a simple and expeditious means by which the assignee might be required to report and account. That was the thought of the first section; and that at once suggested the necessity of providing for the removal of a dishonest or unfaithful assignee, and the substitution of another, and that, in turn, to the propriety of providing for the final discharge of the assignee when his accounting should be full and satisfactory. Incidental to the accomplishment of these ends, and in connection with these particular provisions, it is said that "all proceedings under this title shall be subject to the order and supervision of the

judge of the district court of the county in which such assignment was made,"and providing that such supervisory jurisdiction might be called into active exercise by petition of one or more creditors. But we feel very sure that the legislature never intended by these subsidiary provisions to radically change the original theory of the statute authorizing and regulating assignments. When the statute expressly declares that every assignment made under it shall be "subject to the provisions of the code relative to trusts and to fraudulent transfers," and then, as to "trusts and fraudulent transfers," that "every transfer of property or change therein made * * * with intent to delay or defraud any creditor or other person of his demands is void against all creditors of the debtor," little reason is left for debate as to whether an assignment executed for such fraudulent purpose is valid or void. If void, it conveys nothing to the assignee, but leaves the property in the assignor. An instrument would not be void if it had the effect to transfer the title or the custody of property from one to another. An assignment with preferences, being invalid, would have no effect, only that the statute affirmatively says that in such case the property of the insolvent shall become a trust fund, to be administered by the court, (Section 4660;) but no such status is declared for property covered by a fraudulent or defective assignment, but in such case the whole transaction is stamped as void. The statute of Iowa under which Shoe Co. v. Mercer, 51 N. W. Rep. 415, was decided, holding property covered by an assignment under that law to be in *custodia legis*, is different from ours in just the respect that would account for the holding in that case. By our law the assignor makes a list of his creditors, and files it with the assignment in the office of the register of deeds of the proper county, and no provision is made in the statute whereby a creditor may, under the assignment, contest the correctness or honesty of the list or the validity of any particular claim. By the Iowa law the list of creditors is made by the assignee, and not by the assignor, and filed in the

court, and any creditor may except to the demand of any other creditor. The court tries the issue thus made, by a jury, if necessary, and renders judgment. Thus, the statute itself provides a direct and adequate means by which any creditor may, without disturbing the assignment, object to and have judicially investigated the validity of the claim of any creditor. With such provisions in force, there is no reason for allowing a general attack upon the assignment, particularly on account of a challenged claim not listed or necessarily approved by the assignor. Under the Iowa law the list of creditors or its correctness sustains no such relation to the assignment as under ours. There no assignment can be declared void for want of such list. Here the statute makes the assignment void if the list is not duly made and filed. There are other respects in which the two statutes are essentially different. They are not constructed upon the same theory or plan. The reasoning and ruling of the Iowa case are not applicable to our statute.

It is also argued by respondent that the Minnesota cases point to the conclusion contended for by him. He suggests, what may be assumed as correct, that so much of said Section 4675 as was Section 1, Chapter 9, Laws 1887, providing "that all proceedings under this title shall be subject to the order and supervision of the judge of the district court of the county in which such assignment was made," etc., was taken from the Minnesota law of 1876, as amended in 1877, and then cites Kingman v. Barton, 24 Minn. 295, where the question was upon the rights of an assignee who had failed to file a bond as required by the statute. In his brief the respondent quotes from the opinion of the court the following language, as indicating the opinion of the court as to the character of the law: "Further, the proceeding is in the nature of a judicial proceeding. By the filing of the assignment the court gets jurisdiction over the assignor, and proably over the property, but it gets none over the assignee until he files his bond." It must be remembered in this connection that the Minnesota law required the assign-

ment, the inventories, and the bond of the assignee all to be filed in the office of the clerk of the district court, and, while it might be plausible to say that the object and effect of filing such papers in court was to place their subject-matter under the jurisdiction of the court in which they were filed, it would not be equally plausible to say that the filing of the same papers in the office of the register of deeds, as required by our statute, was intended to have the same effect. The later Minnesota cases, like Donohue v. Ladd, 31 Minn. 244, 17 N. W. Rep. 381, and *In re* Mann, 32 Minn. 60, 19 N. W. Rep. 347 in which it was held that the assigned property was in *custodia legis*, arose under the insolvent laws of 1881, and, as respondent frankly concedes, are not closely applicable to this case. Aside from the single provision in said Section 4675, borrowed from the Minnesota statute, we find nothing in our law that would suggest the thought or legislative intent that, upon the making of an assignment by an insolvent debtor, and filing the same in the office of the register of deeds, the circuit court should at once take and have jurisdiction and control over the execution of the trust, any more than over any other trust which the statute allows parties to make. The borrowed section may be an apt and consistent provision in a law whose general purpose and theory is to place the assigned estate under the immediate supervision and control of the court, but its transplantation from such a law to ours, which was not so intended and has no such purpose, simply adds a new feature to our law, important, but still incidental. The amendment is attached to, and becomes a part of, the law, and not the law to the amendment. We are therefore of the opinion that the execution of the assignment did not place the property mentioned in it in the custody of the law, so as to protect it from the reach of appellant's attachments. We say the execution of the assignment did not do this. What may be the effect upon the status of the assigned estate of the actual interference by the court upon an affirma-

·tive showing of cause therefor, under said Sections 4675, it is not now necessary to consider, for no such question is presented by the facts in this case.

We have thus, at unjustifiable length perhaps, attempted to examine each point presented by either side upon this re-hearing, and we discover no reason to doubt the correctness of the conclusions of ·the former opinion as prepared by Judge BENNETT.