DAVIES et al., Respondents v. TOMS et al., Appellants

(63 N. W.2d 406)

(File No. 9390. Opinion filed March 24, 1954)
Rehearing denied April 30, 1954

**Max Royhl, Boyd M. Benson,** Huron, and **J. W. Bolling-er,** Platte, for Plaintiffs and Respondents.

**Churchill & Churchill,** Huron, for Defendants and Appellants.

LEEDOM, J.   The circuit court of Beadle County entered a judgment setting aside a deed that named appellants as grantees.   The deed if valid would convey to appellants, a brother and sister of the grantor, now deceased, real estate that except for the deed would have remained in the deceased grantor's estate and been subject to the operation of her will.   The will, identical to that of her husband who died less than 60 days before grantor, devised a half interest in the land to each of two groups of persons, to the grantor's brother and sister (appellants) and the children of her deceased brother, on the one side, and grantor's deceased husband's brothers and sisters and children of his deceased brother on the other side.   The latter group brought the action to have the deed set aside and thus to restore the property to the estate.   We affirm the judgment entered below setting the deed aside.

Respondents sought to set the deed aside on the ground, among others, that it was executed and delivered because of the undue influence of appellants on their sister.   The trial court rested its decision on this ground.   We deem the issue of undue influence decisive of the case and so deal only with it and those questions necessarily incident to it.

Appellants cite numerous cases including those of this jurisdiction holding that mere opportunity for exerting undue influence does not warrant setting a deed aside, that a conveyance to persons in a confidential relationship is not necessarily bad though they do not concede that relationship existed here, and that deeds resulting from influence that flows from a display of affection, kind treatment and friendly helpfulness are not invalidated as products of "undue" influence.   With these abstract principles of law we do not argue.   The difficulty is encountered in applying the

principles to a given case, in determining the truth from available evidence, and in drawing the line between that kind of influence that does not control the will of the contracting party and the other kind, the result of excessive selfishness or that partakes of the quality of fraud that destroys the gift or contract, and that the law terms undue influence. Even though certain of the cases cited by appellants involve fact situations somewhat similar to those here involved and in certain instances required this court to reverse the trial court's finding of undue influence, none in our opinion presents a fact situation so closely analogous to the facts in the case at bar as to sustain appellants' view that this evidence does not support the trial court's finding of undue influence.

■ ■ The burden was on respondents to establish undue influence. 17 Am.Jur., Duress and Undue Influence, § 38. This they did to the satisfaction of the judge in the trial court. The finding of undue influence there entered will not be disturbed unless it appears from the record there is a clear preponderance of evidence against it. In re Thompson's Estate, 48 S.D. 474, 205 N.W. 47.

We attach special significance to these circumstances in reaching the decision that the evidence supports the trial court's finding that the deed was the result of appellants' undue influence:

■ **First.** The disposition of the property by the deed was in contradiction of the will made about 60 days before the deed. The will clearly had the thoughtful and independent consideration of both the grantor of the deed, and her husband. It provided for a natural and fair disposition of the property. The change brought about by the deed is a result from which the trier of facts could decide that undue influence was in fact exerted. Such a result is one of four recognized elements of undue influence, i. e., (1) a person that is subject to influence; (2) an opportunity to exert undue influence; (3) a disposition to exert undue influence; and (4) a result indicating undue influence. The record shows that appellants acquired not only the land described in the deed but also other property of very considerable value, substantially all that their grantor owned. This circumstance in our

view might justifiably in the opinion of the trial court bear on element (3) mentioned above, that is, a disposition on the part of the persons benefited to exert undue influence.

**Second.** The grantor, aged 61 and very ill, was almost entirely dependent on appellants for the management of her farm and all other business matters and for the execution of every personal desire and furnishing every need excepting the professional nursing and medical care given during the time spent in the hospital, for about two months prior to the execution of the deed. This gave appellants an unusual opportunity to exert undue influence if they were so disposed. Such opportunity alone of course would not justify setting the deed aside, but obviously opportunity is indispensable to the exertion of undue influence. By reason of the intimacy of this relationship between grantor and appellants they inevitably influenced grantor's acts. The question for decision in the case is whether that influence was improper under the law.

**Third.** The trial court found from the general demeanor of appellants on the witness stand and the evasive, reluctant and hesitant manner in which they answered questions that their entire testimony was not worthy of belief. Apart from the special opportunity a trial judge has to determine a witness' credibility through personal observation, the record discloses support for this finding of the trial court. This conclusion of falsity in appellants' testimony furnishes in a large part the fraudulent or selfish and unfair design essential to a judicial finding of "undue" influence and tends to render improper the influence that otherwise might have been adjudged to flow naturally from what would appear to be acts of kindness and sacrificial helpfulness bestowed upon the grantor by appellants.

**Fourth.** A few days before the deed was signed appellant Kiel endorsed a check payable to grantor's deceased husband and instead of holding it for the account of the payee's estate which the other appellant later administered, deposited it to the account of grantor. This account of the grantor was later divided equally between the two appellants by a check drawn by Mrs. Kiel in favor of the other appellant and

by a transfer of funds within the depository bank to her own credit. Testimony concerning these transactions indicates that the manner of handling them was not forthright if not irregular. This circumstance in the case adds to the "undue" character of appellants' influence with grantor.

**Fifth.** In the eight months prior to her death grantor had been admitted to the hospital 12 times. For several weeks during the latter part of this period she was quite regularly given injections of a narcotic drug, by nurses when in the hospital, and by appellant Kiel when at home between periods of hospitalization. On the day before the deed was signed she had 6 such injections. On the day of the signing she had 5. Her regular physician testified that on these two days she "was under constant narcosis" a condition in which she would not understand "much of anything"; and that a person so under narcotics "can be easily led". This weakened condition of grantor physically and mentally and her dependence on appellants as set out in paragraph **Second** above are strong circumstances tending to show influence may have been unfair. Restat., Contracts, § 497, Comment. c.; Williston on Contracts, § 1625; and see SDC 10.0310.

**Sixth.** The deed was executed on a Sunday. This makes its execution unusual and gives to it a degree of urgency that normally would not be expected if this grantor had concluded through normal processes of decision to make and deliver the deed to her brother and sister. Sick as she was there is no evidence of special need for not waiting until a regular day for transaction of business to make the deed or for interrupting her lawyer's planned Sunday trip into the country. While this circumstance certainly is not direct evidence that appellants controlled the matter it does indicate that the grantor was under some extraordinary motivation. This likelihood is heightened by the apparent apprehension over the validity of a Sunday transaction evidenced by dating the deed on the preceding day. We know that circumstances of illness and hospitalization many times require hasty execution of legal documents but we see no such circumstances here. This grantor had opportunity prior to the execution of this deed, and also for many days after to do what she did

on Sunday, as she lingered with her condition becoming worse only gradually, for more than a month and a half.

Against the foregoing circumstances that in our opinion support the trial court's finding of undue influence there are certain other circumstances on which appellants rely that merit discussion:

(1) Appellants introduced a postcard written by grantor to appellant Kiel at her home in Nebraska. In it Mrs. Kiel was urged by grantor to return to Huron following her earlier visit and attendance upon grantor. She wrote she could not get help and stated to appellant Kiel "You are going to get well paid for your work". Appellants argue that this clearly indicates an intention then formed in grantor's mind to do some such thing for appellant Kiel as deeding the land and that the subsequent deed is only a fulfillment of the intention independently and voluntarily formed. The argument has merit but we are not persuaded as against the other circumstances set out above. Grantor may very well have had a reference in the quoted phrase to the very substantial provision she had already made for appellant in the will; or the postcard itself may have been the result of appellants' prior conditioning of the grantor's mind.

(2) Grantor's own lawyer testified that on the day of the execution of the deed grantor appeared to be acting of her own volition and competently; that he asked her on being directed to prepare the deed in favor of appellants if she was sure she wanted to do it and specifically called to her attention the different method of disposition settled upon by herself and her husband shortly before in the making of the wills; and that grantor definitely advised him she desired such a deed and that she could make such disposition of the property because the title of the land was in her name.

The attorney's testimony however clearly discloses that he was called not as a counselor but as a draftsman. Grantor did not seek his advice on a matter of disposition of property she then was considering. Her mind was made up. Her positive assurance to the lawyer, on his inquiry, that she knew what she wanted to do, and furthermore had the right to do it, is entirely consistent with, and

conceivably supports the contention, that the grantor's attitude of mind was due to the coercion of appellants. The theory of law that removes the cloud of undue influence on a showing that the one allegedly overpersuaded had independent advice involves of course actual advice that is neither incompetent nor perfunctory. Post v. Hagan, 71 N.J.Eq. 234, 65 A. 1026, 124 Am.St.Rep. 997. Where, as here, advice as contemplated by the rule was neither requested nor given the rule of course has no application. Advice implies at least apparent open-mindedness on the part of the recipient.

■ Other evidence, in considerable volume, on which appellants rely at most only creates a conflict with that which the trial court believed and on which he rested his decision. This consisted of testimony of old friends of grantor and other persons standing in business relationships that came about in several instances through contacts made by appellants; also a doctor who admitted that grantor's regular physician was in the better position to judge her condition of mind. Their testimony principally was that at the time of their contact with grantor, at periods of varying closeness to the time of execution of the deed, she in their opinion was capable of transacting business. While such testimony might be regarded in conflict with the evidence showing a weakened condition of grantor's mind and will, it was not directly of probative force on the issue of undue influence but rather on mental capacity and the latter was not the issue on which the case was decided. We think the trial court had the right to reject the evidence these witnesses gave as being of little relevance on the issue of undue influence or certainly as being less persuasive than that supporting undue influence.

■ Appellants contend that the trial court made the finding of undue influence under the misapprehension that the burden was on appellants to prove that the deed they obtained was valid. The record does not show any such misapprehension. In the circuit judge's memorandum opinion and in the formal decision it is stated that the burden is on appellants to prove that the deed was not procured by undue

influence, but such statements are based on the sound premise that evidence offered by respondents had already established a confidential relationship between the parties to the deed. While in most accurate legal phraseology the "burden of proof" never shifts from the one who undertakes to set aside a deed on the ground of undue influence, there is a burden that does transfer over to the other side when evidence offered shows a relationship of trust and confidence. 26 C.J.S., Deeds, § 193; Williston on Contracts, § 1625A; 17 Am.Jur., Duress and Undue Influence, §§ 38, 39. The latter type burden this court has called the "burden of going forward with the evidence". McKiver v. Theo. Hamm Brewing Co., 67 S.D. 613, 297 N.W. 445, 447, and see Life Benefit Inc., v. Elfring, 69 S.D. 85, 7 N.W.2d 133. While this language was not used by the trial court in the case at bar it clearly appears from the language used in the findings and conclusions that these sound principles on burden of proof were applied to this case. The question of confidential relationship except in cases involving certain persons such as attorney and client, trustee and beneficiary, guardian and ward and other fiduciaries, is a question of fact rather than law. Restat., Contracts, § 497, Comment a. The relationship arises when the facts show the parties to be on unequal footing and one in a position of dominance. We think the evidence here clearly establishes that such relationship existed between this grantor and appellants. This being the case the burden then rested on appellants to show that they took no unfair advantage of their dominant position. We think the evidence does not preponderate against the trial court's conclusion that appellants did not carry this burden. There is no error in the record in this connection.

■ ■ Appellants also invoke the rule requiring a trial court to make a finding of fact on every issue and urge that the lower court erred in refusing to make a finding on the issue of the grantor's mental capacity. The rule has no application except as to issues necessary to a determination of the action. Ellens v. Lind, 65 S.D. 620, 277 N.W. 40. Mental incapacity in the legal sense that denotes mental inability to enter into a contract, is foreign to this case and a finding thereon in appellants' favor would have been wholly

unrelated to the determination of the action in view of the finding of undue influence. Grantor's mental weakness as a factor of susceptibility to outside influence is significant; her mental capacity to make a valid contract has nothing whatever to do with the decision rendered below.

The judgment entered by the circuit court is affirmed.

RUDOLPH, ROBERTS and SICKEL, JJ., concur.

SMITH, P. J., concurs in result.