**Karon K. DELANY, Plaintiff and Appellee,**

v.

**Albert L. DELANY, Defendant,**

and

**Ben Delany, Defendant and Appellant.**

No. 15207.

Supreme Court of South Dakota.

Considered on Briefs Oct. 21, 1986.

Decided March 18, 1987.

R.C. Riter & Robert Riter, Jr., Riter, Mayer, Hofer & Riter, Pierre, for plaintiff and appellee.

Rick Johnson, Johnson, Eklund & Davis, Gregory, for defendant and appellant.

SABERS, Justice.

Ben Delany (Ben), appeals an order setting aside two quit-claim deeds. We affirm.

### Facts

Ben and his brother Albert Delany (Albert), were equal partners in a farming business near Academy, South Dakota. Their partnership, Delany Brothers, had been involved in farming and other ventures since the 1950's.

In May of 1975 Karon Delany (Karon), was employed to care for Ben and Albert's mother. Upon employment, she resided at the Delany home place which was occupied by the two brothers and their sick mother. A romance developed between Karon and Albert and they were married in Mitchell, South Dakota on July 10, 1975. Ben was unaware of the relationship until after the marriage. He was very upset about it and moved out of the home place. Ben claimed that Albert owed him over one hundred thousand dollars and that he and Albert "had a problem once before about not getting our affairs in order and getting somebody else involved."

Shortly after the marriage, Karon's father became seriously ill and was confined to the hospital in Chamberlain, South Dakota. On July 31, 1975, Karon was at the hospital with her father. Albert requested that she accompany him to a local realtor's office to sign some papers. He told her that they were just papers, that they were not really legal, and if they were legal, it would be for a period of five years only. Albert also told Karon that the papers were necessary to prove to his sisters that Karon had not married him for his money. Karon consented. Albert and Karon then left the hospital and went to the realtor's office where they executed the quit-claim deeds in question. Karon did not read the papers, nor was anything explained to her before she signed them. They were only gone from the hospital for a brief period of time.

The deeds signed by Albert and Karon purported to convey all of their right, title, and interest in the real property formerly held by Delany Brothers to Ben Delany. According to Karon's testimony, she received no consideration for this transfer. Albert claimed that in consideration for the deeds Karon received one dollar, permission to live on the partnership property, and that he and Karon would receive 50 percent of the "off the ground" profits even though they didn't own the land anymore. Ben similarly testified as to this consideration. Karon denied receiving a dollar or being advised of any other consideration.

Several months after Karon signed the deeds she expressed concern to her parents. They told her that she should not have signed them without reading the deeds first. However, Karon stated that she chose not to act upon this advice because she trusted Albert and still believed that he was telling the truth.

The evidence is conflicting as to the delivery of the deeds. Ben stated that Albert and Karon gave the deeds to him and he kept them in a steel box underneath his bed. Albert told Karon the "papers" would be stored in an attorney's safe at the realtor's office. However, when she questioned him about them in 1981, Albert told her that he didn't know where the papers were anymore. Karon stated that she never gave the deeds to Ben. The trial court found that approximately two years after the deeds were executed, Albert showed them to a dinner guest who testified that they were the deeds in question.

Albert and Ben continued to treat the property as owned by Delany Brothers. The partnership continued to make payments on land purchased under contract with partnership assets; the partnership continued to pay the taxes, maintenance, and expenses on the property deeded to Ben; and Albert and Karon were not required to pay rent for their continued occupancy of the home place.

In 1983, Albert and Karon sought to borrow money for improvements to the home place. In preparation for this loan, Albert orally represented to the vice president of the Tri-County State Bank that he had a one-half ownership interest in the Delany Brothers partnership. According to the banker's testimony, he filled out a financial statement based on Albert's representations. However, Albert did not return to the bank to sign the statement. The banker was not sure whether the loan was ever transacted or the improvements made. Karon testified that they made extensive improvements to the house which included replacing half the roof and adding a patio deck. She further stated that Albert used a personal loan from the bank to do this work. After questioning the banker, the trial court admitted the financial statement in evidence since it reflected Albert's representations to the banker.

The court admitted other financial statements which dated from 1978 through 1984. Each of them was signed by Albert on behalf of Delany Brothers and given to the bank. These statements reflected a full partnership between Albert and Ben and listed all the real estate and personalty owned by Delany Brothers. Partnership federal income tax returns were also filed.

On September 24, 1984, Albert sued Karon for divorce. On November 9, 1984, Albert recorded the quit-claim deeds which purportedly vested title to the property in Ben. On December 11, 1984, Karon initiated this action against Albert and Ben to have the deeds set aside based upon fraud and undue influence.

A court trial was held on September 23 and 24, 1985. The trial court entered Findings of Fact, Conclusions of Law, and a Judgment on October 10, 1985. The court's findings included:

> ... that the Defendants and each of them ... exercised fraud and undue influence upon the Plaintiff, ... a breach of confidential relationship, ... non-delivery of the instrument for purposes of transferring title until after the divorce action was commenced and ... no ... delivery of any kind by Karon Delany....

[The court compared the testimony of Albert and Karon and found] that: the facts and circumstances are consistent with Karon Delany's testimony inasmuch as the Deeds were not recorded until after the divorce was filed, that the parties continued to operate and maintain the property as owned by the partnership and continued to act to the outside world as if the Deeds did not exist until after the divorce action was filed; and suspicious circumstances arise regarding the location of the Deeds throughout the nine (9) years prior to their recordation by Albert Delany.

In holding that the deeds should be set aside and declared null and void, the trial court concluded that a confidential relationship existed between Albert and Ben Delany with respect to Karon, and that Albert and Ben, individually, and the Delany Brothers partnership were beneficiaries under the deeds. The court further concluded:

... that Karon was susceptible to undue influence, that Albert Delany and Ben Delany had the opportunity to exert such influence over her and to effect a wrongful purpose, that Albert Delany and Ben Delany had the disposition to exert such undue influence for an improper purpose and the end result showing few assets, if any, in the divorce proceedings ... show the effects of such influence.

Ben appeals to this court.

### Ben's Claims

Ben contends that the trial court erred in setting aside the deeds because (1) Karon's claim was barred by the statute of limitations; (2) there was insufficient evidence of fraud and undue influence; and (3) even if Karon's signature was procured through fraud or undue influence, the deeds should be voided only as to Karon and not as to Albert.

1. KARON'S CLAIM TO SET ASIDE THE DEEDS WAS NOT BARRED BY THE STATUTE OF LIMITATIONS

The deeds were executed on July 31, 1975. Karon sought to have them set aside on the grounds of fraud and undue influence. Ben claims that Karon's action was barred from the outset by the six year statute of limitations for fraud, SDCL 15–2–13(6). Karon contends that she did not discover the fraud until after the deeds were recorded on November 9, 1984.

The trial court concluded:

[U]nder the totality of the circumstances ... the statute of limitations herein has not elapsed as it did not commence running until the fraud was recognized and discovered, which did not occur until the recording of the Deeds in November of 1984.

The trial court's findings of fact are reviewed under the "clearly erroneous" standard. SDCL 15–6–52(a); *Wiggins v. Shewmake*, 374 N.W.2d 111, 114 (S.D.1985). In applying this standard, this court will not overturn the trial court's decision unless, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made. *Id.*

SDCL 15–2–3 provides:

In an action for relief on the ground of fraud the cause of action shall not be deemed to have accrued until the aggrieved party discovers, or has actual or constructive notice of, the facts constituting the fraud.

Awareness of fraud is a question of fact for the trier of fact. *Lundquist v. First National Bank of Beresford*, 65 S.D. 95, 271 N.W. 664 (1937). In *Holy Cross Parish v. Huether*, 308 N.W.2d 575 (S.D.1981), we held that evidence of fraudulent concealment and the plaintiff's reliance upon representations concerning same, tolled the statute of limitations until the cause of action was discovered or might have been discovered. *Id.* at 577.

In this case, the record supports the trial court's conclusion. Karon has a ninth grade education. She had worked only as a waitress, maid, and dancer. At the time of her marriage to Albert, she had little, if any, business experience. Although she

had been married twice before, she had never owned or transferred title to real property, nor seen a deed. Karon trusted her husband at the time the deeds were executed. She relied on his assertions that the "papers" had no legal effect, that they were signed to keep peace in the family, and to prove to his sisters that she wasn't a "golddigger." Karon's limited education and business experience, coupled with her ignorance of deeds made her all the more reliant upon Albert.

Even after the deeds were executed, Albert and Ben continued to hold themselves out as equal partners in Delany Brothers. Albert and Karon proceeded to work the farm as husband and wife. When the deeds were finally recorded over nine years later, Karon promptly brought this action to challenge them.

Based on the foregoing, we hold that Karon's claim was not time barred since the cause of action did not accrue until she discovered the fraud when the deeds were recorded in November of 1984.

2. THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE CLAIM FOR FRAUD AND UNDUE INFLUENCE

■ The standard of proof for fraud is a preponderance of evidence. *Jennings v. Jennings,* 309 N.W.2d 809, 812 (S.D.1981). The burden of establishing fraud rests upon the party who seeks to rely on it for affirmative relief. *Id.* An apparent consent to a contract is not real or free and is voidable when obtained through fraud or undue influence. SDCL 53–4–1. The general rule is that when fraud is in issue, and there is any evidence tending to support it, the question should be left to the trier of fact. *Wright v. Lee,* 2 S.D. 596, 625, 51 N.W. 706, 715, *aff'd,* 4 S.D. 237, 55 N.W. 931 (1892). Actual fraud is always a question of fact. *In re Sepco, Inc.,* 36 B.R. 279, 285 (Bankr.D.S.D.1984).

■ Undue influence requires a person susceptible to undue influence; an opportunity to exert undue influence and effect a wrongful purpose; a disposition to do so

for an improper purpose; and a result clearly showing the effect of undue influence. *Kase v. French,* 325 N.W.2d 678, 680 (S.D.1982). A confidential relationship arises when the facts show the parties to be on unequal footing and one in a position of dominance. *Davies v. Toms,* 75 S.D. 273, 281, 63 N.W.2d 406, 410 (1954). The existence of a confidential relationship is a question of fact rather than law. *Id.*

■ The trial court found and the evidence shows that Albert and Ben held confidential relationships with Karon; Albert, as her spouse upon whom she relied for advice and decision-making, and Ben, as her brother-in-law and partner in Delany Brothers. Once this confidential relationship was established, the burden of going forward with the evidence shifted to the brothers to show that they took no unfair advantage of their dominant position. *See: Matter of Estate of Borsch,* 353 N.W.2d 346, 349 (S.D.1984); *Black v. Gardner,* 320 N.W.2d 153, 159 (S.D.1982); *Matter of Estate of Pierce,* 299 N.W.2d 816, 819 (S.D. 1980); *Davies,* 75 S.D. at 281, 63 N.W.2d at 410, (affirming a judgment setting aside a deed on the ground of undue influence where a confidential relationship existed between the parties). The evidence supports the trial court's conclusion that Albert and Ben failed to carry this burden.

The trial court found that: Karon was susceptible to undue influence because of her limited education and business experience; an opportunity to exert undue influence existed because she was emotionally upset as a result of her father's illness; Albert and Ben were disposed to exert undue influence; and the effect of undue influence was shown through the deeds, under which Ben benefited by obtaining property in excess of Albert's debt and Albert benefited by the continuing partnership and by preventing Karon from claiming any interest in the real property upon divorce. Even though Karon did not contribute to the acquisition of the real property in question, she may have a claim against Albert's interests in the real prop-

erty and in the partnership upon dissolution of marriage.

Karon testified that she never delivered the deeds to Ben nor did she intend to relinquish her interest in the property. Delivery of a deed is essential to vest the interest intended to be transferred. *See:* SDCL 43–4–7. Whether delivery of a deed has occurred is a question of intent to be determined from all the facts surrounding the transaction. *Nelson v. Nelson,* 293 N.W.2d 463, 466 (S.D.1980); *Larsen v. Morrison,* 293 N.W.2d 468, 471 (S.D.1980). The benefits which accrued to the brothers in recording these deeds after the divorce action was started and the facts surrounding this transaction indicate that Albert and Ben took unfair advantage of their dominant position over Karon.

The brothers claimed that the deeds were given because Albert owed Ben a substantial amount of money under the partnership. However, Ben was unable to produce any documents which reflected the sum owed to him by Albert. Albert and Ben represented on numerous financial statements that Delany Brothers was a full partnership. The banker testified that in all of his dealings with Albert, Albert never mentioned that he no longer owned an interest in the property owned by the Delany Brothers partnership. Ben himself admitted at trial that Delany Brothers continued to operate as a partnership from the time he received the deeds until the start of the divorce action. The trial court found Albert's testimony unpersuasive and Karon's testimony consistent with the facts and circumstances as presented by all the evidence. We give deference to the court's opportunity to hear the evidence and judge the credibility of the witnesses. SDCL 15–6–52(a).

Karon had the burden of establishing fraud and undue influence. She did this to the satisfaction of the trial court. The record shows that the court's findings have evidentiary support. We will not disturb a finding of undue influence on appeal, unless there is a clear preponderance of evidence against it. *Davies,* 75 S.D. at 276, 63 N.W.2d at 407. Based upon all the evidence, we hold that the trial court was not clearly erroneous in setting aside the deeds on the basis of fraud and undue influence.

### 3. THE TRIAL COURT'S DECISION IS VALID AS TO ALBERT

For all the reasons set forth in the preceding section concerning Karon's signature, we affirm the trial court's holding that the deeds should also be set aside as to Albert.[1]

Accordingly, the judgment is affirmed.

All the Justices concur.

FOSHEIM, Retired J., participating.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

---

**1.** *See: Meske v. Wenzel,* 247 Wis. 598, 20 N.W.2d 654, 657 (1945), where the husband executed an assignment of his interest in a note and chattel mortgage for the purpose of preventing his wife, with whom he was having trouble, from obtaining any part of it; the instrument was rendered void on grounds of public policy in fraud of the wife. The court further held that the assignee, being a party to the fraud, could not affirmatively assert his right as against the assignor/husband.